# EXHIBIT A

UCS

1  TERRY M. GORDON – SBN 75604
   LAW OFFICES OF TERRY M. GORDON
2  Three Harbor Drive, Suite 317
   Sausalito, California  94965
3  Telephone:    (415) 331-3601
   Facsimile:    (415) 331-1225
4
5  JOHN G. JACOBS (*PRO HAC VICE* PENDING)
   BRYAN G. KOLTON (*PRO HAC VICE* PENDING)
6  THE JACOBS LAW FIRM, CHTD.
   122 South Michigan Avenue
7  Suite 1850
   Chicago, Illinois 60603
8  Telephone: (312) 427-4000
   Facsimile: (312) 427-1850
9
10 JAY EDELSON (*PRO HAC VICE* PENDING)
   MYLES MCGUIRE (*PRO HAC VICE* PENDING)
11 BLIM & EDELSON, LLC
   53 West Jackson Boulevard
12 Suite 1642
   Chicago, Illinois 60604
13 Telephone: (312) 913-9400
   Facsimile: (312) 913-9401

14 ATTORNEYS FOR PLAINTIFF

FILED  Santa Clara Co
09/13/07    2:39pm
Kiri Torre
Chief Executive Offic
By: jzenzen DTSCIV010
R#200700091060
CK            $320.00
TL            $320.00
Case: 1-07-CV-094234

J. Zenzen

15

16                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

17                       FOR THE COUNTY OF SANTA CLARA

18

19 RUSSELL BRADBERRY, individually and          ) Case No. **107CV-094234**
   on behalf of a class of similarly situated   )
20 individuals,                                  ) **COMPLAINT FOR DAMAGES**
                                                 ) **AND INJUNCTIVE RELIEF**
21              Plaintiff,                        )
                                                 )
22 v.                                            )
                                                 ) DEMAND FOR JURY TRIAL
23 MBLOX, INC., a Delaware corporation,          )
                                                 )
24              Defendant.                        ) <u>CLASS ACTION</u>          **BY FAX**
                                                 )
25

26

27

28
   ─────────────────────────────────────────────
   COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## CLASS ACTION COMPLAINT

Plaintiff Russell Bradberry ("Bradberry"), on behalf of himself, a class and a subclass, brings this class action against mBlox, Inc. ("mBlox") seeking to stop Defendant's practice of causing cellular telephone customers to be billed for mobile content services that the customers did not order, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1.    The increased use of cell phones has given rise to a new industry that provides so-called "mobile content" services such as ringtones, text alerts, jokes, news, games, and daily horoscopes to cell phone users' mobile devices.  The providers of mobile content (the mobile "content providers") charge for their services and cause such charges to be placed directly on customers' cell phone accounts through their wireless carriers (the "carriers"). The carriers then bill and collect such amounts, serving as partners in these transactions, retaining a portion of all revenue that they collect on account of mobile content services.

2.    Because mobile content providers are typically unable to establish a direct billing and content delivery relationship with the carriers, they most often turn to one of a handful of companies known in the industry as "aggregators," such as mBlox, that act as billing intermediaries without whom the mobile content providers would generally be unable to provide and bill for their mobile content services.

3.    While aggregators such as mBlox charge their content provider clients some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill the carriers' customers: each time a charge is incurred in connection with an alleged purchase of mobile content services offered by a content provider, the aggregator and the content provider cause the charge to be billed directly on the cellular telephone bill of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 2 -

1  the carrier's customer who currently owns and/or uses the telephone number claimed to be

2  associated with that purchase.

3      4.      The carrier then bills and collects the charges from its current customer,

4  retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance

5  to the aggregator, i.e., mBlox, who retains a percentage of the balance in the form of its own

6  "revenue share" and who then remits the balance to its content provider client.

7      5.      In a widespread industry practice little known by those outside the industry,

8  but known to Defendant, carriers such as AT&T Mobility, LLC d/b/a Cingular Wireless

9  ("Cingular"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), Sprint-Nextel

10  Corporation ("Sprint") and T-Mobile USA, Inc. ("T-Mobile"), among many others, routinely

11  "recycle" so-called "dirty" telephone numbers to their customers when they sign up for new

12  cellular telephone service. The numbers are "recycled" in that they were previously owned

13  and/or used by other persons or entities. The numbers are "dirty" in that they are

14  encumbered with pre-existing billing obligations for products and services authorized to be

15  purchased, if at all, by the previous owners and/or users of those numbers.

16      6.      Despite its knowledge about the problem of recycled dirty numbers,

17  Defendant has helped create a system through which cell phone users are billed for mobile

18  content services ordered not by them, but by the previous owners of their cell phone

19  numbers.

20      7.      As a result, for years Defendant has systematically, repeatedly and without

21  authorization caused charges to be placed on the cell phone bills of thousands of consumers

22  across the country for content that was never authorized to be purchased by the current

23  owners of the affected phone numbers, but rather, if at all, by the previous owners of such

24  cell phone numbers, and it has profited enormously from its wrongful conduct, in violation

25  of: (a) the common law of unjust enrichment; (b) the common law of tortious interference

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- 3 -

1  with a contract; and (c) in violation of California Business and Professions Code section

2  17200 consumer fraud provisions.

3      8.      Plaintiff seeks on behalf of himself and the class members, money damages,

4  disgorgement, injunctive and declaratory relief, costs, and reasonable attorney's fees.

5                                    **PARTIES**

6      9.      Plaintiff Russell Bradberry is a citizen of California.

7      10.     Defendant mBlox, Inc. ("mBlox"), known in the industry as an "aggregator,"

8  is a provider of mobile payments processing and is self-described as the "world's largest

9  mobile transactions network." mBlox is a Delaware corporation with its headquarters and

10 principal place of business in the State of California.  mBlox does business throughout the

11 United States, including the State of California and this County.

12                                  **JURISDICTION**

13     11.     This Court has jurisdiction over the causes of action asserted herein pursuant

14 to the California Constitution, Article VI, §10, because this case is a cause not given by

15 statute to other trial courts.

16     12.     This Court has jurisdiction over Defendant pursuant to Code of Civil

17 Procedure section § 410.10 because Defendant resides in and/or conducts business in the

18 State of California and/or many of Defendant's wrongful acts arose or emanated from

19 California.

20                                     **VENUE**

21     13.     Venue is proper in this Court pursuant to Code of Civil Procedure § 395.5

22 because Defendant's principal place of business is in this County.

23         **THE PROBLEM OF RECYLED DIRTY CELL PHONE NUMBERS**

24     14.     Cell phone customers are assigned unique phone numbers for their phones,

25 just like traditional land-lines.

26

27

28

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

- 4 -

15.    However, unlike traditional phones people can use cell phones to pay for certain third-party provided services, like, for example, "ringtones," subscriptions for horoscopes, jokes or stock quotes, sent periodically to customers' cell phones, etc. (A ringtone is simply the sound made by a telephone to indicate an incoming call. The term is most often used to refer to the customizable sounds available on mobile phones.)

16.    These services generally renew automatically each month and the resulting charges are included on the customer's cell phone bill.

17.    The instant lawsuit flows from what happens when a carrier reissues (or "recycles") a cellular number previously assigned to one of its customers that has been abandoned. (Customers abandon numbers for many different reasons, e.g. they move to a different area code, they change carriers, they no longer want one of their cell phones, or they want a different phone number.)

18.    Defendant knows that these abandoned numbers are often encumbered with preexisting subscriptions to mobile content services thus rendering these numbers "dirty."

19.    Nevertheless, specifically in order to bilk cell phone customers out of money, Defendant has refused to set up procedures to insure that cell phone customers are not charged for preexisting subscriptions authorized, if at all, by a previous owner or user of the number.

20.    Thus, when a telephone number is reassigned to a new customer, Defendant continues to charge the new customer for subscriptions purchased by the old customers.

## THE FACTS RELATING TO THE NAMED PLAINTIFF

21.    On November 2, 2005, Plaintiff visited the store of an authorized T-Mobile sales representative located in Visalia, California to purchase new cell phone service for his personal use.

22.    On that same day, in exchange for a T-Mobile cell phone plan of 600 "anytime" minutes, Plaintiff agreed to pay T-Mobile $39.99 each month for a period of 12

1    months. (A copy of T-Mobile's Service Agreement with Plaintiff is attached hereto as

2    Exhibit A.)

3         23.    T-Mobile's Service Agreement, including the documents referenced therein,

4    are classic contracts of adhesion. That is, T-Mobile drafts the boilerplate terms -- including

5    the purported class action waiver and arbitration clauses – and offers them to potential

6    customers purely on a take-it-or-leave-it basis. Further, Mr. Bradberry did not see and was

7    not given a copy of the "Terms and Conditions" referenced in the Service Agreement either

8    prior to signing the agreement or at the time of signing.

9         24.    Upon execution of his Service Agreement and activation of his cellular

10   telephone account, T-Mobile provided Plaintiff a cellular phone number or "GSM #" (that is,

11   a Global System for Mobile Communications number) of "tmo+619446----." *(Redacted.)*

12        25.    Unbeknownst to Plaintiff, T-Mobile provided him with a recycled "dirty"

13   phone number -- one saddled with preexisting obligations, encumbrances and billing

14   arrangements for products and services provided by Defendant that were authorized to be

15   purchased, if at all, by the previous owner(s) and/or user(s) of that number.

16        26.    Thus, beginning on or about November 2, 2005 -- the same day Plaintiff

17   obtained his cell phone number and started receiving service from T-Mobile -- and

18   continuing through at least April 28, 2006, Plaintiff's cell phone received multiple unwanted

19   "premium" text message calls on a near daily basis from Defendant and/or Defendant's client

20   Cellfish Media, LLC f/k/a Lagadere Interactive North America, Inc. ("Cellfish").

21   Simultaneously, Plaintiff's cell phone account incurred multiple "premium" text message

22   charges on a near daily basis from Defendant. "Premium" text messages are those that

23   include various forms of software such as ringtones, or as in Plaintiff's case, a text message

24   chatting service.

25        27.    Throughout the relevant period, Plaintiff received dozens of such messages.

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- 6 -

28.    At no time during the relevant period did Plaintiff authorize the purchase of said products and services provided by Defendant and its client and at no time did Plaintiff consent to either Defendant's or its client Cellfish's sending of text messages to his cellular telephone.

29.    Throughout the relevant time period, T-Mobile billed Plaintiff for "premium" text messaging charges of $0.50 for each of the incoming "premium" text messages Defendant sent to Plaintiff, in addition to T-Mobile's standard charge of $0.05 per each incoming text message.

30.    At no time did Plaintiff authorize T-Mobile, Defendant or anyone else to bill him for those charges.

31.    Plaintiff's counsel later learned that the purported authorization to be billed for Defendant's charges was obtained from an unidentified person with the same "GSM #" eventually assigned by T-Mobile to Plaintiff ("tmo+6194468xxx"); however, the authorization for the subject charges was obtained on July 13, 2005 – a date more than three months *prior* to the time that Plaintiff signed his Service Agreement with T-Mobile, obtained that same cell phone number, or started receiving cell phone service.

32.    Plaintiff could not possibly have authorized the charges for which he was being billed.  He did not have any account with T-Mobile at that time.  Indeed, from May 2005 until October 2005, Plaintiff was out of the country in the Persian Gulf serving in the United States Navy aboard the U.S.S. Nimitz.

### DEFENDANT BILLED AND COLLECTED MILLIONS OF DOLLARS IN UNAUTHORIZED MOBILE CONTENT CHARGES

33.    Through mBlox's services, its end-to-end technology platform and other value-added services, it has become a one-stop shop for numerous third-party mobile content providers such as Cellfish, and carriers such as T-Mobile, empowering them to take advantage of wireless technology as a content delivery, marketing and communications

1   channel, while carving out a role for itself as a very critical intermediary in this rapidly

2   growing industry.

3          34.     In order to tap into the emerging wireless content marketplace and make

4   content services available to wireless consumers, content providers must first obtain access to

5   wireless carriers' mobile communications networks and they frequently do so by

6   "partnering" with intermediary companies such as mBlox that provide the content providers

7   direct access to the carriers through existing relationships.

8          35.     mBlox has developed a vast distribution system that integrates into the

9   wireless networks of some of the largest wireless carriers nationwide, including Verizon,

10  Cingular, Sprint Nextel, Alltel, US Cellular, among many others.

11         36.     While aggregators such as mBlox charge their content provider clients some

12  upfront fees, their revenue is primarily generated through a "revenue share" on transactions

13  for which they bill the carriers' customers: each time a charge is incurred in connection with

14  an alleged purchase of mobile content services offered by a content provider, the aggregator

15  and the content provider cause the charge to be billed directly on the cellular telephone bill of

16  the carrier's customer who currently owns and/or uses the telephone number claimed to be

17  associated with the purchase.

18         37.     The carrier then bills and collects the charges from its current customer,

19  retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance

20  to the aggregator, e.g., mBlox, who retains a percentage of the balance in the form of its own

21  "revenue share" and then remits the balance to its content provider client, e.g., Cellfish.

22         38.     mBlox has registered hundreds of millions of transactions and processed

23  hundreds of millions of dollars in transactions over the years and has profited enormously

24  from its arrangement with its carrier partners and its content provider partners.

25         39.     As Defendant knows, the carriers routinely "recycle" so-called "dirty"

26  telephone numbers to their customers when they sign up for new cellular telephone service.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 8 -

1  The numbers are "recycled" in that they were previously owned and/or used by other persons

2  or entities. The numbers are "dirty" in that they are encumbered with pre-existing billing

3  obligations and subscriptions for products and services authorized to be purchased, if at all,

4  by the previous owners and/or users of those numbers.

5      40.    Defendant has not only sanctioned this illegal billing, it has actively and

6  knowingly promoted it by, *inter alia*, actively negotiating and facilitating partnerships

7  between and amongst each other and/or other carriers, aggregators and content providers

8  wherein (1) the content providers and aggregators do not adequately verify whether a

9  telephone number has been recycled; (2) the carriers do not adequately verify the details of

10 the purported authorization to place charges on a cell phone customer's bill, including the

11 identity of the person who supposedly consented to the service, the date such consent was

12 obtained or the manner in which it was obtained; and/or (3) charges are illegally inserted into

13 customers' billing statements for subscriptions authorized by previous owners of the

14 telephone number.

15     41.    Defendant has intentionally helped create a system wherein each participant

16 has a piece of the information and thus can, at least, claim (false as it is) that the blame rests

17 solely at the feet of another. Such system constitutes a deliberate and wilful scheme to cheat

18 large numbers of people out of small amounts of money.

19     42.    As a direct result, Defendant has profited enormously from this illegal

20 practice, all the while being able to maintain plausible deniability.

21                       **CLASS ALLEGATIONS**

22     43.    Plaintiff brings this action, pursuant to Code of Civil Procedure § 382 on

23 behalf of himself, a class and a subclass. Those classes are defined as follows:

24     A. The "Class:" consisting of all wireless telephone subscribers in the nation

25 who were charged by mBlox for mobile content services not authorized by the existing

26 owner of the telephone number, but, rather, if at all, by a prior owner or user of the number;

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 9 -

1   provided, however, that the following are excluded from this proposed Class: (i) the

2   defendant, and (ii) any relative or employee of defendant.

3          B.   The "Sub-Class:" a class consisting of all members of the Class who

4   entered into subscription contracts within the state of California.

5          44.   The Classes each consist of thousands of individuals and other entities,

6   making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

7          45.   The claims of Plaintiff are typical of the claims of all of the other members of

8   the respective Classes.

9          46.   Plaintiff will fairly and adequately represent and protect the interests of the

10  other members of the respective classes.  Plaintiff has retained counsel with substantial

11  experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are

12  committed to vigorously prosecuting this action on behalf of the members of the classes, and

13  have the financial resources to do so.  Neither Plaintiff nor his counsel have any interest

14  adverse to those of the other members of the Classes.

15         47.   Absent a class action, most members of the Classes would find the cost of

16  litigating their claims to be prohibitive, and will have no effective remedy.  The class

17  treatment of common questions of law and fact is also superior to multiple individual actions

18  or piecemeal litigation in that it conserves the resources of the courts and the litigants, and

19  promotes consistency and efficiency of adjudication.

20         48.   Defendant has acted and failed to act on grounds generally applicable to the

21  Plaintiff and the other members of the respective classes, requiring the Court's imposition of

22  uniform relief to ensure compatible standards of conduct toward the members of the Classes.

23         49.   The factual and legal bases of Defendant's liability to Plaintiff and to the other

24  members of the respective Classes are the same, resulting in injury to the Plaintiff and to all

25  of the other members of the Classes.  Plaintiff and the other Class members have all suffered

26  harm and damages as a result of Defendant's unlawful and wrongful conduct.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 10 -

50.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Class include but are not limited to the following:

(a)     Whether mBlox has unjustly received money belonging to Plaintiff and the Class and whether under principles of equity and good conscience, mBlox should not be permitted to retain it;

(b)     Whether mBlox tortiously interfered with Plaintiff's and the Class's contracts with their wireless carriers by causing them to be charged for products and services by their carrier that were authorized, if at all, by the previous owner and/or user of their telephone number.

51.     Common questions for the Sub-Class include:

(a)     Whether mBlox's conduct described herein violates California Business and Professions Code sections 17200, *et seq.*

## COUNT I

### (Restitution/Unjust Enrichment on behalf of the Class)

52.     Plaintiff incorporates by reference the foregoing allegations.

53.     A benefit has been conferred upon Defendant by Plaintiff and the Class. Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of millions of dollars in unauthorized third party mobile content charges, and in particular, its practice of systematically, repeatedly and without authorization, causing Plaintiff and the Classes of cellular telephone customers to be billed by their cellular carriers for mobile content services authorized to be purchased, if at all, by the previous owners and/or users of such telephone numbers.

54.     Defendant appreciates or has knowledge of said benefit.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 11 -

1    55.    Under principles of equity and good conscience, Defendant should not be

2    permitted to retain the money belonging to Plaintiff and the Class which Defendant has

3    unjustly received as a result of its actions.

4                                    **COUNT II**

5                    **(Tortious Interference with a Contract on behalf of the Class)**

6    56.    Plaintiff incorporates by reference the foregoing allegations.

7    57.    Plaintiff and the Class had contractual relationships with their wireless carriers

8    whereby they agreed to pay a certain sum of money in exchange for activation of their

9    cellular telephone accounts and their carriers' promise to provide various communication and

10   related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products

11   or services the purchase of which they had authorized.

12   58.    Defendant knew of these contractual relationships and intended to and did

13   induce a breach or disruption of the contractual relationships.

14   59.    Defendant intentionally interfered with said contractual relationships through

15   improper motives and/or means by knowingly and/or recklessly repeatedly causing

16   unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners

17   across the nation.

18   60.    Plaintiff and the Class have suffered loss as a direct result of Defendant's

19   conduct.

20                                    **COUNT III**

21   **(Unlawful, Unfair and Deceptive Business Practices in Violation of California
     Business & Professions Code § 17200, et seq. on behalf of the Sub-Class)**

22   61.    Plaintiff incorporates by reference the foregoing allegations.

23   62.    The Unfair Business Practices Act proscribes unfair business competition and

24   defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice.

25   California Business & Professions Code §17200 *et seq.*

26

27

28

63.     Defendant violated, and continues to violate this proscription through its conduct as set forth above.

64.     Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class. Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

65.     Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Russell Bradberry, on behalf of himself and the respective Classes, prays for the following relief:

a)     Certify this case as a class action on behalf of the Classes and as defined above and appoint Russell Bradberry Class Representative, and appoint Jay Edelson and John G. Jacobs, as co-lead counsel;

b)     Declare that the actions of Defendant, as set out above, constitute unjust enrichment, tortious interference with a contract, and are in violation of California Business and Professions Code §17200;

c)     Enter judgment against Defendant for all economic, monetary, actual, consequential, and compensatory damages caused by Defendant' conduct, and if their conduct is proved willful award Plaintiff and the Classes exemplary damages;

f)     Award Plaintiff and the Classes reasonable costs and attorneys' fees;

g)     Award Plaintiff and the Classes pre- and post-judgment interest;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 13 -

1      h)     Enter judgment for injunctive and/or declaratory relief as is

2    necessary to protect the interests of Plaintiff and the Classes;

3        i)     Award such other and further relief as equity and justice may

4    require.

5                        **JURY DEMAND**

6    Plaintiff requests trial by jury of all claims that can be so tried.

7

8                             Respectfully submitted,

9    Dated: September 13, 2007      LAW OFFICES OF TERRY M. GORDON

10

11

12

13                     By:_____

14                       TERRY M. GORDON
                            One of the Attorneys for RUSSELL

15                       BRADBERRY, individually and on
                            behalf of a class of similarly situated

16                       individuals

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 14 -

# EXHIBIT B

LAW OFFICES OF TERRY M. GORDON

THREE HARBOR DRIVE · SUITE 317 · SAUSALITO, CA 94965

TELEPHONE: (415) 331-3601
FACSIMILE: (415) 331-1225

September 13, 2007

Corporation Service Company
d/b/a CSC – Lawyers Incorporating Service
P. O. Box 526036
Sacramento, California 95852

      Re:    *Russell Bradberry v. mBlox, Inc.*
             Santa Clara County Superior Court, Case No. 107CV-094234

             CSC – Agent for Service of Process on behalf of
             mBlox, Inc., a Delaware corporation

Dear Sir or Madam:

      CSC is designated as the Agent for Service of Process on behalf of mBlox, Inc., a
Delaware corporation. In that capacity, we are serving Defendant mBlox, Inc., through,
CSC, with the enclosed Summons, Complaint, Civil Lawsuit Notice, and ADR
Information sheet in the above-referenced action. Please acknowledge receipt of service
by signing the enclosed Notice and Acknowledgment of Receipt and returning the signed
original to our office at your earliest convenience. If we do not receive the signed
Acknowledgment within 20 days, we will proceed with taking the necessary steps to
serve the papers personally on Defendant.

      Please call should you have any questions. Thank you for your attention to this.

      Sincerely,

      Jenny Ryan
      Legal Assistant to Terry M. Gordon

/jr
Enclosures

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):*<br>Terry M. Gordon, SBN 75604<br>Law Offices of Terry M. Gordon<br>Three Harbor Drive, Suite 317<br>Sausalito, CA 94965<br>TELEPHONE NO.: 415-331-3601    FAX NO. *(Optional):* 415-331-1225<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff Russell Bradberry | FOR COURT USE ONLY |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: 191 N. First Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Jose, CA 95113<br>BRANCH NAME: |

| | |
|---|---|
| PLAINTIFF/PETITIONER: RUSSELL BRADBERRY<br><br>DEFENDANT/RESPONDENT: MBLOX, INC. | |
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>107CV-094234 |

TO *(insert name of party being served):* mBlox, Inc., through CSC, its Agent for Service of Process

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: September 17, 2007

Jenny Ryan
_____    ►    _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
    Civil Lawsuit Notice issued by Court 9/13/07

    Superior Court of California, County of Santa Clara, Alternative Dispute Resolution Information Sheet/Civil Division
*(To be completed by recipient):*

Date this form is signed:

_____    ►    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

American LegalNet, Inc.
www.USCourtForms.com

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

| |
|---|
| **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |
| ENDORSED<br>FILED<br><br>SEP 13 07<br><br>KIRI TORRE<br>CHF EXEC. OFFICER/CLERK<br>SUPERIOR COURT OF CA<br>COUNTY OF SANTA CLARA<br>By J. Zenzen |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MBLOX, INC., a Delaware corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
RUSSELL BRADBERRY, individually and on behalf of a class of similarly situated individuals

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Santa Clara County Superior Court<br>191 N. First Street<br>San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>**1 CV - 094234** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Terry M. Gordon, Law Offices of Terry M. Gordon
Three Harbor Drive, Suite 317, Sausalito, CA 94965, (415) 331-3601

| DATE:<br>*(Fecha)* SEP 13 2007 **Kiri Torre**<br>**Chief Executive Officer/Clerk** | Clerk, by<br>*(Secretario)* **J. Zenzen** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 (Rev. January 1, 2004) | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc.<br>www.USCourtForms.com |
|---|---|---|

TERRY M. GORDON - SBN 75604
LAW OFFICES OF TERRY M. GORDON
Three Harbor Drive, Suite 317
Sausalito, California 94965
Telephone:    (415) 331-3601
Facsimile:    (415) 331-1225

JOHN G. JACOBS (*PRO HAC VICE* PENDING)
BRYAN G. KOLTON (*PRO HAC VICE* PENDING)
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850

JAY EDELSON (*PRO HAC VICE* PENDING)
MYLES MCGUIRE (*PRO HAC VICE* PENDING)
BLIM & EDELSON, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

ATTORNEYS FOR PLAINTIFF

ENDORSED
FILED

SEP 13 07

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
J. Zenzen

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| RUSSELL BRADBERRY, individually and on behalf of a class of similarly situated individuals,<br><br>               Plaintiff,<br><br>v.<br><br>MBLOX, INC., a Delaware corporation,<br><br>               Defendant. | Case No. **107CV-094234**<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL<br><br>CLASS ACTION    **BY FAX** |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## CLASS ACTION COMPLAINT

Plaintiff Russell Bradberry ("Bradberry"), on behalf of himself, a class and a subclass, brings this class action against mBlox, Inc. ("mBlox") seeking to stop Defendant's practice of causing cellular telephone customers to be billed for mobile content services that the customers did not order, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1.      The increased use of cell phones has given rise to a new industry that provides so-called "mobile content" services such as ringtones, text alerts, jokes, news, games, and daily horoscopes to cell phone users' mobile devices. The providers of mobile content (the mobile "content providers") charge for their services and cause such charges to be placed directly on customers' cell phone accounts through their wireless carriers (the "carriers"). The carriers then bill and collect such amounts, serving as partners in these transactions, retaining a portion of all revenue that they collect on account of mobile content services.

2.      Because mobile content providers are typically unable to establish a direct billing and content delivery relationship with the carriers, they most often turn to one of a handful of companies known in the industry as "aggregators," such as mBlox, that act as billing intermediaries without whom the mobile content providers would generally be unable to provide and bill for their mobile content services.

3.      While aggregators such as mBlox charge their content provider clients some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill the carriers' customers: each time a charge is incurred in connection with an alleged purchase of mobile content services offered by a content provider, the aggregator and the content provider cause the charge to be billed directly on the cellular telephone bill of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- 2 -

1  the carrier's customer who currently owns and/or uses the telephone number claimed to be

2  associated with that purchase.

3       4.    The carrier then bills and collects the charges from its current customer,

4  retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance

5  to the aggregator, i.e., mBlox, who retains a percentage of the balance in the form of its own

6  "revenue share" and who then remits the balance to its content provider client.

7       5.    In a widespread industry practice little known by those outside the industry,

8  but known to Defendant, carriers such as AT&T Mobility, LLC d/b/a Cingular Wireless

9  ("Cingular"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), Sprint-Nextel

10  Corporation ("Sprint") and T-Mobile USA, Inc. ("T-Mobile"), among many others, routinely

11  "recycle" so-called "dirty" telephone numbers to their customers when they sign up for new

12  cellular telephone service. The numbers are "recycled" in that they were previously owned

13  and/or used by other persons or entities. The numbers are "dirty" in that they are

14  encumbered with pre-existing billing obligations for products and services authorized to be

15  purchased, if at all, by the previous owners and/or users of those numbers.

16       6.    Despite its knowledge about the problem of recycled dirty numbers,

17  Defendant has helped create a system through which cell phone users are billed for mobile

18  content services ordered not by them, but by the previous owners of their cell phone

19  numbers.

20       7.    As a result, for years Defendant has systematically, repeatedly and without

21  authorization caused charges to be placed on the cell phone bills of thousands of consumers

22  across the country for content that was never authorized to be purchased by the current

23  owners of the affected phone numbers, but rather, if at all, by the previous owners of such

24  cell phone numbers, and it has profited enormously from its wrongful conduct, in violation

25  of: (a) the common law of unjust enrichment; (b) the common law of tortious interference

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 3 -

1  with a contract; and (c) in violation of California Business and Professions Code section

2  17200 consumer fraud provisions.

3      8.    Plaintiff seeks on behalf of himself and the class members, money damages,

4  disgorgement, injunctive and declaratory relief, costs, and reasonable attorney's fees.

5                              **PARTIES**

6      9.    Plaintiff Russell Bradberry is a citizen of California.

7      10.    Defendant mBlox, Inc. ("mBlox"), known in the industry as an "aggregator,"

8  is a provider of mobile payments processing and is self-described as the "world's largest

9  mobile transactions network." mBlox is a Delaware corporation with its headquarters and

10  principal place of business in the State of California.  mBlox does business throughout the

11  United States, including the State of California and this County.

12                            **JURISDICTION**

13      11.    This Court has jurisdiction over the causes of action asserted herein pursuant

14  to the California Constitution, Article VI, §10, because this case is a cause not given by

15  statute to other trial courts.

16      12.    This Court has jurisdiction over Defendant pursuant to Code of Civil

17  Procedure section § 410.10 because Defendant resides in and/or conducts business in the

18  State of California and/or many of Defendant's wrongful acts arose or emanated from

19  California.

20                              **VENUE**

21      13.    Venue is proper in this Court pursuant to Code of Civil Procedure § 395.5

22  because Defendant's principal place of business is in this County.

23        **THE PROBLEM OF RECYLED DIRTY CELL PHONE NUMBERS**

24      14.    Cell phone customers are assigned unique phone numbers for their phones,

25  just like traditional land-lines.

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
-4-

15.    However, unlike traditional phones people can use cell phones to pay for certain third-party provided services, like, for example, "ringtones," subscriptions for horoscopes, jokes or stock quotes, sent periodically to customers' cell phones, etc. (A ringtone is simply the sound made by a telephone to indicate an incoming call. The term is most often used to refer to the customizable sounds available on mobile phones.)

16.    These services generally renew automatically each month and the resulting charges are included on the customer's cell phone bill.

17.    The instant lawsuit flows from what happens when a carrier reissues (or "recycles") a cellular number previously assigned to one of its customers that has been abandoned. (Customers abandon numbers for many different reasons, e.g. they move to a different area code, they change carriers, they no longer want one of their cell phones, or they want a different phone number.)

18.    Defendant knows that these abandoned numbers are often encumbered with preexisting subscriptions to mobile content services thus rendering these numbers "dirty."

19.    Nevertheless, specifically in order to bilk cell phone customers out of money, Defendant has refused to set up procedures to insure that cell phone customers are not charged for preexisting subscriptions authorized, if at all, by a previous owner or user of the number.

20.    Thus, when a telephone number is reassigned to a new customer, Defendant continues to charge the new customer for subscriptions purchased by the old customers.

**THE FACTS RELATING TO THE NAMED PLAINTIFF**

21.    On November 2, 2005, Plaintiff visited the store of an authorized T-Mobile sales representative located in Visalia, California to purchase new cell phone service for his personal use.

22.    On that same day, in exchange for a T-Mobile cell phone plan of 600 "anytime" minutes, Plaintiff agreed to pay T-Mobile $39.99 each month for a period of 12

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 5 -

1   months. (A copy of T-Mobile's Service Agreement with Plaintiff is attached hereto as

2   Exhibit A.)

3          23.     T-Mobile's Service Agreement, including the documents referenced therein,

4   are classic contracts of adhesion.  That is, T-Mobile drafts the boilerplate terms – including

5   the purported class action waiver and arbitration clauses – and offers them to potential

6   customers purely on a take-it-or-leave-it basis.  Further, Mr. Bradberry did not see and was

7   not given a copy of the "Terms and Conditions" referenced in the Service Agreement either

8   prior to signing the agreement or at the time of signing.

9          24.     Upon execution of his Service Agreement and activation of his cellular

10   telephone account, T-Mobile provided Plaintiff a cellular phone number or "GSM #" (that is,

11   a Global System for Mobile Communications number) of "tmo+619446----." *(Redacted.)*

12          25.     Unbeknownst to Plaintiff, T-Mobile provided him with a recycled "dirty"

13   phone number -- one saddled with preexisting obligations, encumbrances and billing

14   arrangements for products and services provided by Defendant that were authorized to be

15   purchased, if at all, by the previous owner(s) and/or user(s) of that number.

16          26.     Thus, beginning on or about November 2, 2005 -- the same day Plaintiff

17   obtained his cell phone number and started receiving service from T-Mobile -- and

18   continuing through at least April 28, 2006, Plaintiff's cell phone received multiple unwanted

19   "premium" text message calls on a near daily basis from Defendant and/or Defendant's client

20   Cellfish Media, LLC f/k/a Lagadere Interactive North America, Inc. ("Cellfish").

21   Simultaneously, Plaintiff's cell phone account incurred multiple "premium" text message

22   charges on a near daily basis from Defendant. "Premium" text messages are those that

23   include various forms of software such as ringtones, or as in Plaintiff's case, a text message

24   chatting service.

25          27.     Throughout the relevant period, Plaintiff received dozens of such messages.

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 6 -

28.    At no time during the relevant period did Plaintiff authorize the purchase of said products and services provided by Defendant and its client and at no time did Plaintiff consent to either Defendant's or its client Cellfish's sending of text messages to his cellular telephone.

29.    Throughout the relevant time period, T-Mobile billed Plaintiff for "premium" text messaging charges of $0.50 for each of the incoming "premium" text messages Defendant sent to Plaintiff, in addition to T-Mobile's standard charge of $0.05 per each incoming text message.

30.    At no time did Plaintiff authorize T-Mobile, Defendant or anyone else to bill him for those charges.

31.    Plaintiff's counsel later learned that the purported authorization to be billed for Defendant's charges was obtained from an unidentified person with the same "GSM #" eventually assigned by T-Mobile to Plaintiff ("tmo+6194468xxx"); however, the authorization for the subject charges was obtained on July 13, 2005 – a date more than three months *prior* to the time that Plaintiff signed his Service Agreement with T-Mobile, obtained that same cell phone number, or started receiving cell phone service.

32.    Plaintiff could not possibly have authorized the charges for which he was being billed. He did not have any account with T-Mobile at that time. Indeed, from May 2005 until October 2005, Plaintiff was out of the country in the Persian Gulf serving in the United States Navy aboard the U.S.S. Nimitz.

**DEFENDANT BILLED AND COLLECTED MILLIONS OF
DOLLARS IN UNAUTHORIZED MOBILE CONTENT CHARGES**

33.    Through mBlox's services, its end-to-end technology platform and other value-added services, it has become a one-stop shop for numerous third-party mobile content providers such as Cellfish, and carriers such as T-Mobile, empowering them to take advantage of wireless technology as a content delivery, marketing and communications

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 7 -

1    channel, while carving out a role for itself as a very critical intermediary in this rapidly

2    growing industry.

3        34.    In order to tap into the emerging wireless content marketplace and make

4    content services available to wireless consumers, content providers must first obtain access to

5    wireless carriers' mobile communications networks and they frequently do so by

6    "partnering" with intermediary companies such as mBlox that provide the content providers

7    direct access to the carriers through existing relationships.

8        35.    mBlox has developed a vast distribution system that integrates into the

9    wireless networks of some of the largest wireless carriers nationwide, including Verizon,

10    Cingular, Sprint Nextel, Alltel, US Cellular, among many others.

11        36.    While aggregators such as mBlox charge their content provider clients some

12    upfront fees, their revenue is primarily generated through a "revenue share" on transactions

13    for which they bill the carriers' customers: each time a charge is incurred in connection with

14    an alleged purchase of mobile content services offered by a content provider, the aggregator

15    and the content provider cause the charge to be billed directly on the cellular telephone bill of

16    the carrier's customer who currently owns and/or uses the telephone number claimed to be

17    associated with the purchase.

18        37.    The carrier then bills and collects the charges from its current customer,

19    retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance

20    to the aggregator, e.g., mBlox, who retains a percentage of the balance in the form of its own

21    "revenue share" and then remits the balance to its content provider client, e.g., Cellfish.

22        38.    mBlox has registered hundreds of millions of transactions and processed

23    hundreds of millions of dollars in transactions over the years and has profited enormously

24    from its arrangement with its carrier partners and its content provider partners.

25        39.    As Defendant knows, the carriers routinely "recycle" so-called "dirty"

26    telephone numbers to their customers when they sign up for new cellular telephone service.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- 8 -

1  The numbers are "recycled" in that they were previously owned and/or used by other persons

2  or entities.  The numbers are "dirty" in that they are encumbered with pre-existing billing

3  obligations and subscriptions for products and services authorized to be purchased, if at all,

4  by the previous owners and/or users of those numbers.

5        40.    Defendant has not only sanctioned this illegal billing, it has actively and

6  knowingly promoted it by, *inter alia*, actively negotiating and facilitating partnerships

7  between and amongst each other and/or other carriers, aggregators and content providers

8  wherein (1) the content providers and aggregators do not adequately verify whether a

9  telephone number has been recycled; (2) the carriers do not adequately verify the details of

10  the purported authorization to place charges on a cell phone customer's bill, including the

11  identity of the person who supposedly consented to the service, the date such consent was

12  obtained or the manner in which it was obtained; and/or (3) charges are illegally inserted into

13  customers' billing statements for subscriptions authorized by previous owners of the

14  telephone number.

15        41.    Defendant has intentionally helped create a system wherein each participant

16  has a piece of the information and thus can, at least, claim (false as it is) that the blame rests

17  solely at the feet of another.  Such system constitutes a deliberate and wilful scheme to cheat

18  large numbers of people out of small amounts of money.

19        42.    As a direct result, Defendant has profited enormously from this illegal

20  practice, all the while being able to maintain plausible deniability.

21                          **CLASS ALLEGATIONS**

22        43.    Plaintiff brings this action, pursuant to Code of Civil Procedure § 382 on

23  behalf of himself, a class and a subclass. Those classes are defined as follows:

24        A. The "Class:" consisting of all wireless telephone subscribers in the nation

25  who were charged by mBlox for mobile content services not authorized by the existing

26  owner of the telephone number, but, rather, if at all, by a prior owner or user of the number;

27

28
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 9 -

1   provided, however, that the following are excluded from this proposed Class: (i) the

2   defendant, and (ii) any relative or employee of defendant.

3              B.  The "Sub-Class:"  a class consisting of all members of the Class who

4   entered into subscription contracts within the state of California.

5        44.      The Classes each consist of thousands of individuals and other entities,

6   making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

7        45.      The claims of Plaintiff are typical of the claims of all of the other members of

8   the respective Classes.

9        46.      Plaintiff will fairly and adequately represent and protect the interests of the

10  other members of the respective classes.  Plaintiff has retained counsel with substantial

11  experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are

12  committed to vigorously prosecuting this action on behalf of the members of the classes, and

13  have the financial resources to do so.  Neither Plaintiff nor his counsel have any interest

14  adverse to those of the other members of the Classes.

15       47.      Absent a class action, most members of the Classes would find the cost of

16  litigating their claims to be prohibitive, and will have no effective remedy.  The class

17  treatment of common questions of law and fact is also superior to multiple individual actions

18  or piecemeal litigation in that it conserves the resources of the courts and the litigants, and

19  promotes consistency and efficiency of adjudication.

20       48.      Defendant has acted and failed to act on grounds generally applicable to the

21  Plaintiff and the other members of the respective classes, requiring the Court's imposition of

22  uniform relief to ensure compatible standards of conduct toward the members of the Classes.

23       49.      The factual and legal bases of Defendant's liability to Plaintiff and to the other

24  members of the respective Classes are the same, resulting in injury to the Plaintiff and to all

25  of the other members of the Classes.  Plaintiff and the other Class members have all suffered

26  harm and damages as a result of Defendant's unlawful and wrongful conduct.

27

28

50.    There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class include but are not limited to the following:

(a)    Whether mBlox has unjustly received money belonging to Plaintiff and the Class and whether under principles of equity and good conscience, mBlox should not be permitted to retain it;

(b)    Whether mBlox tortiously interfered with Plaintiff's and the Class's contracts with their wireless carriers by causing them to be charged for products and services by their carrier that were authorized, if at all, by the previous owner and/or user of their telephone number.

51.    Common questions for the Sub-Class include:

(a)    Whether mBlox's conduct described herein violates California Business and Professions Code sections 17200, *et seq.*

## COUNT I

### (Restitution/Unjust Enrichment on behalf of the Class)

52.    Plaintiff incorporates by reference the foregoing allegations.

53.    A benefit has been conferred upon Defendant by Plaintiff and the Class. Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of millions of dollars in unauthorized third party mobile content charges, and in particular, its practice of systematically, repeatedly and without authorization, causing Plaintiff and the Classes of cellular telephone customers to be billed by their cellular carriers for mobile content services authorized to be purchased, if at all, by the previous owners and/or users of such telephone numbers.

54.    Defendant appreciates or has knowledge of said benefit.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 11 -

55.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class which Defendant has unjustly received as a result of its actions.

<div align="center">

**COUNT II**

**(Tortious Interference with a Contract on behalf of the Class)**

</div>

56.     Plaintiff incorporates by reference the foregoing allegations.

57.     Plaintiff and the Class had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts and their carriers' promise to provide various communication and related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products or services the purchase of which they had authorized.

58.     Defendant knew of these contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

59.     Defendant intentionally interfered with said contractual relationships through improper motives and/or means by knowingly and/or recklessly repeatedly causing unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners across the nation.

60.     Plaintiff and the Class have suffered loss as a direct result of Defendant's conduct.

<div align="center">

**COUNT III**

**(Unlawful, Unfair and Deceptive Business Practices in Violation of California Business & Professions Code § 17200, et seq. on behalf of the Sub-Class)**

</div>

61.     Plaintiff incorporates by reference the foregoing allegations.

62.     The Unfair Business Practices Act proscribes unfair business competition and defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code § 17200 *et seq.*

63.    Defendant violated, and continues to violate this proscription through its conduct as set forth above.

64.    Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class.  Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

65.    Such conduct is ongoing and continues to this date.  Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Russell Bradberry, on behalf of himself and the respective Classes, prays for the following relief:

    a)    Certify this case as a class action on behalf of the Classes and as defined above and appoint Russell Bradberry Class Representative, and appoint Jay Edelson and John G. Jacobs, as co-lead counsel;

    b)    Declare that the actions of Defendant, as set out above, constitute unjust enrichment, tortious interference with a contract, and are in violation of California Business and Professions Code §17200;

    c)    Enter judgment against Defendant for all economic, monetary, actual, consequential, and compensatory damages caused by Defendant' conduct, and if their conduct is proved willful award Plaintiff and the Classes exemplary damages;

    f)    Award Plaintiff and the Classes reasonable costs and attorneys' fees;

    g)    Award Plaintiff and the Classes pre- and post-judgment interest;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 13 -

h)      Enter judgment for injunctive and/or declaratory relief as is

necessary to protect the interests of Plaintiff and the Classes;

i)      Award such other and further relief as equity and justice may

require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 13, 2007          LAW OFFICES OF TERRY M. GORDON


By: _____
TERRY M. GORDON
One of the Attorneys for RUSSELL
BRADBERRY, individually and on
behalf of a class of similarly situated
individuals

**EXHIBIT  A**

**T Mobile**                         KOD #13 2490                    Off Site Service Agreement

FOR OFFICE USE ONLY

Activation Date: 11 02 05 ☐New ☐Add-on  Store Name: Alert Cellular
Account #                              Agent Code: 350 0890   Store Phone: 733-0472
Onyx Code           Credit Class         For questions, rate/plan changes, or other functions, visit my.t-mobile.com
Salesperson Name: Myriam Navarra         or go to t-mobile.com or call 611 (from T-Mobile wireless) or (800) 937-8997

**CUSTOMER/BUSINESS INFORMATION**

Name: Russell Brandley            Driver's License # & State: D1552181 WA
Business Name                     E-Mail
Address: 3251 Pepper Greens Ct    Daytime Phone: 858 737-7264
City, State, ZIP: San Diego, CA 76115   Date of Birth: 01/10/1992
SSN or Federal Tax ID #: 576 011 6857   Password

**SERVICE INFORMATION**

LINE 1 ☐ A   Mobile #: GTE 546 8694   Minutes Included: 900 Whenever 14
Rate Plan: ALK   Monthly Access Fee:    Overage Charges:   1st Month Prorated Charges: 39.99
SIM #: 8901 2603 0313 5539 9   Optional Features:
IMEI #: 3560 5330 193 5 5    ☐Included Unlimited   ☐Added txt plan 4.99
Manufacturer/Model #: Ocean Plume    ☐Included Unlimited   ☐Added

LINE 2      Mobile #:          Minutes Included:
Rate Plan   Monthly Access Fee:    Overage Charges:   1st Month Prorated Charges:
SIM #       Optional Features:
IMEI #      ☐Included        ☐Added
Manufacturer/Model #   ☐Included    ☐Added

LINE 3      Mobile #:          Minutes Included:
Rate Plan   Monthly Access Fee:    Overage Charges:   1st Month Prorated Charges:
SIM #       Optional Features:
IMEI #      ☐Included        ☐Added
Manufacturer/Model #   ☐Included    ☐Added

**Smart Access Customers Only:**
You have a $150 annual limit. If your balance exceeds $150, T-Mobile may suspend your service until your balance falls below $100. If your suspended you
will continue to be liable for all charges incurred. Service Coverage:    $36.00 Non refundable fee

**PAYMENT**

Security Deposit           Check/Money order #        Reference #
Method of Payment: ☐ Cash  ☐ Check  ☐ Credit Card  ☐Withdrawal From Bank Account  ☐ P.O.  ☐ Deferred Payment (Business Accounts Only)
Credit Card Information: ☐MC  ☐Visa  ☐AmEx  ☐Other
Credit Card #: 4060 9500 0011 7103  Exp. Date: 07 10 7   Authorization No.: 055900
Bank Account Information: Routing #
AUTOMATIC PAYMENT FROM CREDIT CARD OR BANK ACCOUNT: Please charge my monthly T-Mobile service fees to my credit card or my
bank account. By signing, I authorize T-Mobile to debit my account.
Signature                                  Date: 02 Nov 05

**CUSTOMER INFORMATION**

▸ THIS AGREEMENT INCORPORATES THE T-MOBILE TERMS AND CONDITIONS AND THE FOLLOWING BROCHURES AND MATERIALS:
  Welcome Guide; Welcome Letter; Rates and Services; Coverage Brochure; Coverage Maps; Regional Plan Brochures; T-Mobile for Business Brochure;
  International Brochure; Handhelds Brochure; Added Value Brochure and other rate plan materials.
▸ You have selected a plan with a fixed service term of at least 12 months. Our fixed term plans are subject to a $200 early cancellation fee per line of service.
▸ The monthly access fee entitles you to a fixed number of minutes. If applicable, we will pro-rate for the number of days you are actually on service with T-Mobile for your first month.
▸ There will be a one-time $35.00 activation fee per line of service. A Regulatory Programs fee of 86¢ per line per month applies.
▸ Cancellation and Return Policy: You may cancel your service within 14 days of your service activation date (30 days in IOWA) without a cancellation fee.
  You may also return your phone to T-Mobile within the same time period for a refund. Other restrictions apply, please see Section 5 of the T-Mobile
  Terms and Conditions for a full text of the Cancellation and Return Policy.
▸ We are required to use the residential or business street address you provided, which must be within our licensed service area, to determine certain
  taxes and fees. If you give us an address (such as a PO box) that is not a recognized street address, you will be assigned a default location for tax and
  fee calculation, which may result in a higher or lower charge for taxes and fees.

INITIAL TERM: 12   MONTH(S).   EARLY CANCELLATION FEE OF $200 PER LINE OF SERVICE

Case 4:06-cv-065___CW___Document 15    Filed 12/13/__ 06    Page 6 of 11    P.06

## SERVICE INFORMATION

**LINE 1** ~~A/C 600~~ Mobile # Cell # _449-8694_
Rate Plan _39.99_ Monthly Access Fee _____
SIM # _8901 2603 100 3135 5349_
IMEI # _356 0553 30 11 9385_
Manufacturer/Model # _Own Phone_

MINUTES INCLUDED _600 whenever_
OVERAGE CHARGES _____ 1ST MONTH PRORATED CHARGES _39.99_
OPTIONAL FEATURES
☒Included _unl mts_ ☒Added _txt plan 4.99_
☐Included _unl wkds_ ☐Added _____
☐Included _____ ☐Added _____

**LINE 2** Mobile # _____
Rate Plan _____ Monthly Access Fee _____
SIM # _____
IMEI # _____
Manufacturer/Model # _____

MINUTES INCLUDED _____
OVERAGE CHARGES _____ 1ST MONTH PRORATED CHARGES _____
OPTIONAL FEATURES
☐Included ☐Added
☐Included ☐Added
☐Included ☐Added

**LINE 3** Mobile # _____
Rate Plan _____ Monthly Access Fee _____
SIM # _____
IMEI # _____
Manufacturer/Model # _____

MINUTES INCLUDED _____
OVERAGE CHARGES _____ 1ST MONTH PRORATED CHARGES _____
OPTIONAL FEATURES
☐Included ☐Added
☐Included ☐Added
☐Included ☐Added

**Smart Access Customers Only:**
You have a $150 spending limit. If your balance exceeds $150, T-Mobile may suspend your service until you bring the balance below $100. Even if suspended, you will continue to be liable for all charges incurred. Special Comments: _15.00 non refundable fee_

## PAYMENT

Security Deposit _____ Check/Money order #_____
Method of Payment  ☐ Cash  ☐ Check  ☐ Credit Card  ☒ Withdrawal From Bank Account  ☐ P.O.  ☐ Deferred Payment (Business Accounts Only)    Reference #_____
Credit Card Information: ☐ MC  ☒ Visa  ☐ AmEx  ☐ Other _____
Credit Card # _____ Exp. Date _____ Authorization No. _____
Bank Account Information: Routing Transit #_____ Account #_____

**REDACTED**

**AUTOMATIC PAYMENT FROM CREDIT CARD OR BANK ACCOUNT:** Please charge my monthly T-Mobile service fees to my credit card or bank account. By signing, I authorize T-Mobile to debit my account.

Signature: _____    Date _20 Nov 05_

## IMPORTANT CUSTOMER INFORMATION

- **THIS AGREEMENT INCORPORATES THE T-MOBILE TERMS AND CONDITIONS AND THE FOLLOWING BROCHURES AND MATERIALS:** Welcome Guide; Welcome Letter; Rates and Services; Coverage Brochure; Coverage Maps; Regional Plan Brochure; T-Mobile for Business Brochure; International Brochure; Handheld Brochure; Added Value Brochure and other rate plan materials.
- You have selected a plan with a fixed service term of at least 12 months. Our fixed term plans are subject to a $200 early cancellation fee per line of service.
- The monthly access fee and included minutes, if any, will be prorated for the number of days you are actually on-service with T-Mobile for your first month.
- There will be a one time $35.00 activation fee per line of service. A Regulatory Programs fee of 86¢ per line/month applies.
- **Cancellation and Return Policy.** You may cancel your service within 14 days of your service activation date (30 days in CA) without a cancellation fee. You may also return your Phone to T-Mobile within the same time period for a refund. Other restrictions apply, please see Section 5 of the T-Mobile Terms and Conditions for a full text of the Cancellation and Return Policy.
- We are required to use the residential or business street address you provided, which must be within our licensed service area, to determine certain taxes and fees. If you give us an address (such as a PO box) that is not a recognized street address, you will be assigned a default location for tax and fee calculation, which may result in a higher or lower charge for taxes and fees.

INITIAL TERM _12_ MONTHS    EARLY CANCELLATION FEE OF $200 PER LINE OF SERVICE
Customer Initials _____ I understand that if I terminate service for any reason prior to the Initial Term, I will pay the Early Termination Fee.
☐ You may list my number in a published directory

You authorize T-Mobile or its agents to obtain information about your credit history. You acknowledge you are of legal age, have provided true and complete information, have received a copy of the Agreement, and if signing or activating on behalf of a corporation or other entity, are fully authorized to sign on behalf and bind such entity. If your signature is unauthorized on behalf of such entity, you agree to be personally liable for unpaid amounts when due. You acknowledge receipt of the T-Mobile Terms and Conditions, which are incorporated into this Agreement, and agree to be bound by them. T-Mobile makes no warranties, express or implied regarding the service or equipment. All disputes are subject to mandatory arbitration under the T-Mobile Terms and Conditions.

X Signature: _____    Date _____    Title (Required for business): _____

White – Store    Canary – Customer    Pink – T-Mobile    Blue – Sales Representative    T9037.5 12/04



Visalia Mall #2
2031 South Mooney Blvd
Space #5529
Visalia, CA 93277
1-800-716-1755

INVOICE #    1034253

| | |
|---|---|
| NAME: RUSSELL BRADBERRY | DATE: 11/02/05   PAYMENT TYPE: Visa |
| HOME PHONE: 5597397284   WORK PHONE: | SALES PERSON: HERRERA, MARY   SALES ID #: 3954 |
| ADDRESS: 3264 PEPPERGRASS DR | INVENTORY LOCATION: 337   DEPARTMENT: VISALIA2 |
| CITY: SAN DIEGO   STATE: CA   ZIP: 6891 | CARRIER: |
| PLAN CODE: T-CLASS CUSTOMERS   CC AUTH #: 011379 | |

| QTY | ITEM# | DESCRIPTION | PLAN | CELL # | ESN / IMEI | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | CONVERSION | ACTIVATION ONLY - CONVERSION | T-CLASS | 6194468694 | | 20.00 | 20.00 |
| 1 | TACTFEE | T-CLASS ACT FEE (NONREFUNDABLE | | | | 75.00 | 75.00 |

### CUSTOMER HELP SURVEY

___ You have seen the personal coverage map and the salesperson verified that there is coverage in your area

___ Your Voicemail can be set by pressing 123 send for T-Mobile and *86 send for Verizon

___ You can reach your provider by dialing 611 for T-Mobile or *611 for Verizon

___ Your first bill will include a one-time activation fee of $_____ and your bill cycle will start on the _____ of the month. Your first bill will include a prorated amount of $_____ for your ___ month of service.

___ I ACCEPT / DECLINE (Circle One) GWG Protection Program and fully understand my coverage. Coverage begins the 31st day and is valid for 1 year from purchase date. Any change to my esn/imei needs to be reported to wireless provider and to GWG.

Unreported changes to handset will void coverage. GWG claim # is 1-866-980-6894.

___ You can check your up-to-date minutes by dialing #646# (T-Mobile) or #646 (Verizon)

___ You feel comfortable with the additional features added to your account and your representative has shown you how they work (internet, text messaging, etc.)

___ The salesperson has explained to you the _____ year agreement

___ Your salesperson's name and number is _____

### TERMS AND CONDITIONS OF SALE

___ DEFECTIVE HANDSETS - Alert will exchange manufacture defective handset under 14 days over the counter. The returned phone must be complete with box, battery, charger, instruction manual. Anytime after 14 days the carrier will rapid replace the handset through the mail. Alert employees are happy to assist with replacement arrangements.

___ RETURN POLICY- Alert's return policy is 14 days for T-Mobile Phones and Service (30 days in CA) and 3 days for Verizon Phones and Service. All returns must include merchandise in resellable condition with the unmarked

original box, instruction manual, battery, homecharger and original invoice. Accessories are non-refundable.

___ REFUNDS may take 4-6 weeks to process.

___ SECONDARY AGREEMENT- I understand the phone sold to me at a discounted price was based on the _____ year contract I signed with the carrier. I authorize my credit card to be charged $350 per line if I terminate this contract for any reason prior to the contract expiration date.

| | |
|---|---|
| SUBTOTAL | 95.00 |
| TAX | 0.00 |
| Exchange Credit | |
| TOTAL | 95.00 |

· FORM

# CIVIL LAWSUIT NOTICE

Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA 95113

CASE NUMBER: **107CV-094234**    ATTACHMENT CV-5012

## READ THIS ENTIRE FORM

_PLAINTIFFS_ (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the _Complaint, Summons_, an _Alternative Dispute Resolution (ADR) Information Sheet_, and a copy of this _Civil Lawsuit Notice_, and you must file written proof of such service.

---

_DEFENDANTS_ (The person(s) being sued): You must do each of the following to protect your rights:

1. You must file a written response to the _Complaint_, in the Clerk's Office of the Court, within 30 days of the date the _Summons_ and _Complaint_ were served on you;
2. You must send a copy of your written response to the plaintiff; and
3. You must attend the first Case Management Conference.

Warning: If you do not do these three things, you may automatically lose this case.

---

_RULES AND FORMS:_ You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.scsuperiorcourt.org/civil/rule1too.htm
- Rose Printing: 408-293-8177 or becky@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

_CASE MANAGEMENT CONFERENCE (CMC):_ You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a _Case Management Statement_ (Judicial Council form CM-110) at least 15 calendar days before the CMC.

You or your attorney must appear at the CMC. You may ask to appear by telephone — see Local Civil Rule 8.

---

Your Case Management Judge is: **Neal A. Cabrinha**    Department: **10**

The 1st CMC is scheduled for: (Completed by Clerk of Court)

Date: **FEB 0 5 2008** Time: **3:45pm** in Department **10**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

Date: _____ Time: _____ in Department _____

---

_ALTERNATIVE DISPUTE RESOLUTION (ADR):_ If all parties have appeared and filed a completed _ADR Stipulation Form_ (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

_WARNING:_ Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< . **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < . The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

---

CV-5003 REV 5/06

&lt;     Arbitration is a normally informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree by themselves or with a mediator. If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

Arbitration may be appropriate when:
&lt;     The action is for personal injury, property damage, or breach of contract
&lt;     Only monetary damages are sought
&lt;     Witness testimony, under oath, is desired
&lt;     An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

&lt;     Neutral evaluation is an informal process in which a neutral party (the evaluator) reviews the case with counsel and gives a non-binding assessment of the strengths and weaknesses on each side and the likely outcome. The neutral can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
&lt;     The parties are far apart in their view of the law or value of the case
&lt;     The case involves a technical issue in which the evaluator has expertise
&lt;     Case planning assistance would be helpful and would save legal fees and costs
&lt;     The parties are interested in an injunction, consent decree, or other form of equitable relief

&lt;     Special masters and referees are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

&lt;     Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; and sports, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, for information about ADR procedures, or for other questions about ADR?*

    Contact:
Santa Clara County Superior Court        Santa Clara County DRPA Coordinator
ADR Administrator                           408-792-2704
408-882-2530

---

ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION



LAW OFFICES OF TERRY M. GORDON
THREE HARBOR DRIVE · SUITE 317
SAUSALITO, CALIFORNIA 94965

TO:

Corporation Service Company
d/b/a CSC – Lawyers Incorporating Service
P. O. Box 526036
Sacramento, California 95852