# EXHIBIT C



COPY

ORIGINAL FILED

1   JOHN BLIM (*PRO HAC VICE* pending)
2   JAY EDELSON (*PRO HAC VICE* pending)
    MYLES MCGUIRE (Of Counsel) (*PRO HAC VICE* pending)
3   BLIM & EDELSON, LLC
    53 West Jackson Boulevard
4   Suite 1642
    Chicago, Illinois 60604
5   Telephone: (312) 913-9400
    Facsimile: (312) 913-9401

6   JOHN G. JACOBS (*PRO HAC VICE* pending)
7   BRYAN G. KOLTON (*PRO HAC VICE* pending)
    THE JACOBS LAW FIRM, CHTD.
8   122 South Michigan Avenue
    Suite 1850
9   Chicago, Illinois 60603
    Telephone: (312) 427-4000
10  Facsimile: (312) 427-1850

11  TERRY M. GORDON - SBN 75604
    LAW OFFICES OF TERRY M. GORDON
12  Three Harbor Drive, Suite 317
    Sausalito, California 94965
13  Telephone:   (415) 331-3601
    Facsimile:   (415) 331-1225

14  ATTORNEYS FOR PLAINTIFFS

15

16                IN THE UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

                                                  C 06-6567    EDL

18  RUSSELL BRADBERRY, individually and      ) Case No.
19  on behalf of a class of similarly situated  )
    individuals,                             )
20                                           )  COMPLAINT FOR DAMAGES
                    Plaintiff,               )  AND INJUNCTIVE RELIEF
21                                           )
        v.                                   )
22                                           )  DEMAND FOR JURY TRIAL
    T-MOBILE USA, INC., a Delaware           )
23  corporation                             )
                                             )  CLASS ACTION
24                  Defendant.               )

25

26

27

28

    COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# CLASS ACTION COMPLAINT

Plaintiff Russell Bradberry ("Bradberry"), on behalf of himself a class and sub-class of similarly situated individuals, brings this class action against T-Mobile USA, Inc. ("T-Mobile") seeking to stop T-Mobile's unlawful practice of "recycling" "dirty" cellular telephone numbers, which practice has resulted in unauthorized charges to customers' accounts, and to obtain redress for all persons injured by T-Mobile's conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1.      In a widespread industry practice little known by those outside the industry, T-Mobile routinely "recycles" so-called "dirty" telephone numbers to its customers when they sign up for new cellular telephone service. The numbers are "recycled" in that they were previously owned and/or used by other persons or entities. The numbers are "dirty" in that they are encumbered with pre-existing billing obligations for products and services authorized to be purchased, if at all, by the previous owners and/or users of those numbers.

2.      T-Mobile's practice of re-issuing "dirty" phone numbers has resulted in unauthorized charges being placed on unsuspecting customers' telephone bills, in an illegal practice known as "cramming." For years, T-Mobile has systematically, repeatedly and without authorization, placed charges on customers' monthly bills for third-party services (such as ring tones, joke-a-day programs, wallpaper, screensavers and other forms of software provided by third-party vendors) that were never authorized to be purchased by the current owners of the affected phone numbers, (a) in violation of federal statute; (b) in breach of contract and the duty of good faith and fair dealing, (c) in violation of California Public Utilities Code section 2890 and California Public Utilities Commission Revised

1    General Order 168, and (d) in violation of California Business and Professions Code

2    sections 17200 and 17500 consumer fraud provisions.

3        3.       Because of T-Mobile's wrongful actions, Plaintiff seeks on behalf of himself

4    and the class members, money damages, injunctive and declaratory relief, costs, and

5    reasonable attorneys' fees.

6

7                                        **PARTIES**

8        4.       Plaintiff Russell Bradberry is a citizen of California.

9        5.       Defendant T-Mobile USA, Inc. ("T-Mobile") is a leading provider of cellular

10   telephone service in the United States.  T-Mobile is a Delaware corporation with its principal

11   place of business in the State of New York.  T-Mobile does business throughout the United

12   States, including the State of California and this judicial district.

13

14                                     **JURISDICTION**

15       6.       The Court has original jurisdiction over this action pursuant to 28 U.S.C. §

16   1331.  It also has jurisdiction under section 1332(d), because (a) at least one member of the

17   putative class is a citizen of a state different from Defendant, (b) the amount in controversy

18   exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under

19   that subsection applies to the instant action.  This Court has supplemental jurisdiction over

20   the remaining counts under 28 U.S.C. § 1367.

21

22                                         **VENUE**

23       7.       Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c).

24   ///

25   ///

26   ///

27

28
_____
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

3

# THE FACTS RELATING TO THE NAMED PLAINTIFF

8.    On November 2, 2005, Plaintiff visited the store of an authorized T-Mobile sales representative located in Visalia, California to purchase new cell phone service for his personal use.

9.    On that same day, in exchange for a T-Mobile cell phone plan of 600 "anytime" minutes, Plaintiff agreed to pay T-Mobile $39.99 each month for a period of 12 months. (A copy of T-Mobile's Service Agreement with Plaintiff is attached hereto as Exhibit A.)

10.    Upon execution of his Service Agreement and activation of his cellular telephone account, T-Mobile provided Plaintiff a cellular phone number or "GSM #" (that is, a Global System for Mobile Communications number) of "tmo+6194468694."

11.    Unbeknownst to Plaintiff, T-Mobile provided him with a recycled "dirty" phone number -- one saddled with preexisting obligations, encumbrances and billing arrangements for products and services authorized to be purchased, if at all, by the previous owner(s) and/or user(s) of that number.

12.    Thus, beginning on or about November 2, 2005 — the same day Plaintiff obtained his cell phone number and started receiving service from T-Mobile → and continuing through at least April 28, 2006, Plaintiff's cell phone received multiple unwanted "premium" text message calls on a near daily basis from a company called Cellfish Media, LLC, f/d/b/a Lagardere Active North America, Inc. ("Cellfish"), a third-party seller of cellular ringtone products and services. "Premium" text messages are apparently those that include various forms of software, such as ringtones.

13.    Throughout the relevant period, Plaintiff received hundreds of such messages.

14.    At no time did Plaintiff authorize the purchase of said products and services offered by Cellfish and at no time did Plaintiff consent to Cellfish's sending of text messages to his telephone number.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4

15.     Throughout the relevant time period, T-Mobile billed Plaintiff for "premium" text messaging charges of $0.50 for each incoming "premium" text message, in addition to its standard charge of $0.05 per each incoming text message.

16.     At no time did Plaintiff authorize T-Mobile to bill him for said charges.

17.     In or about early 2006, Plaintiff contacted T-Mobile to inquire why his bills were so high and was told that it was because of the premium text message calls he received from Cellfish. Plaintiff advised T-Mobile that he did not authorize the purchase of said products and services offered by Cellfish and that at no time did he consent to Cellfish's sending of any text messages to his telephone number. Plaintiff then asked T-Mobile how he could stop being sent these unauthorized messages from Cellfish for which he was being charged by T-Mobile.

18.     T-Mobile never offered to remove the unauthorized charges from Plaintiff's bill, never undertook to resolve the dispute to Plaintiff's satisfaction, never verified that Plaintiff had, in fact, provided authorization to purchase products and services offered by Cellfish, never verified whether Plaintiff had, in fact, provided consent to Cellfish's sending of any text messages to his telephone number, and never verified that Plaintiff had, in fact, provided authorization to bill his account for said charges. Rather, T-Mobile simply "passed the buck," advising Plaintiff to contact Cellfish.

19.     On multiple occasions thereafter, Plaintiff attempted to contact Cellfish, but was unable to speak directly with anyone at the company and instead was forced to leave voice mail messages, which Cellfish failed to return.

20.     Plaintiff visited Cellfish's website (www.texttoy.com) and was informed that to stop receiving text messages from Cellfish he would need to reply to one of its messages with the word "STOP." Plaintiff followed those instructions, but instead of stopping the unwanted messages, he began to receive even more such messages.

21. Having not heard from Cellfish and having had no success in stopping the messages, Plaintiff once again contacted T-Mobile. In response, T-Mobile did nothing.

22. Plaintiff, through his counsel, was finally able to contact Cellfish, through its Director of Legal & Business Affairs, Lisa M. Weissberg. On May 11, 2006, Ms. Weissberg provided Plaintiff's counsel what she described as "the initial, voluntary sign up by your client for this service as of July 13, 2005. The messages received are not spam," Ms. Weissberg claimed, "but messages related to the service that, according to the terms of use of the service agreed to by your client, are being sent."

23. The purported authorization to be billed for such charges was obtained from an unidentified person with the same "GSM #" eventually assigned by T-Mobile to Plaintiff ("tmo+6194468694"); however, the authorization for the subject charges was obtained on July 13, 2005 – a date *more than three months prior* to the time that Plaintiff signed his Service Agreement with T-Mobile, obtained that same cell phone number from T-Mobile, or started receiving T-Mobile service.

24. Plaintiff could not possibly have authorized the charges for which he was being billed. He did not have any account with T-Mobile at that time. Indeed, from May 2005 until October 2005, Plaintiff was out of the country in the Persian Gulf serving in the United States Navy aboard the U.S.S. Nimitz, without access to a working cellular phone.

## ADDITIONAL ALLEGATIONS APPLICABLE TO ALL COUNTS

25. T-Mobile is a telephone corporation and public utility as defined in California Pub. Util. Code sections 216 and 234 and is certified by the California Public Utilities Commission ("CPUC") to offer, and does in fact offer and sell, mobile cellular telecommunication services throughout the State of California.

26. T-Mobile uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

6

27. T-Mobile's services include providing access to and billing for various third-party services such as ring tones, joke-a-day programs, wallpaper, screensavers and other forms of software provided by numerous third-party vendors with names such as Jamster, M Qube, Cellfish Media LLC (f/k/a Lagardere Active North America, Inc.), and many others.

28. T-Mobile allows such third-party services to be billed directly on a customer's monthly wireless bill.

29. Envisioning the potential for abuse, the California Legislature adopted California Public Utilities Code section 2890 which provides, in relevant part, that: "(a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized."

30. Public Utilities Code section 2890 was intended to deter the unlawful practice of "cramming," *i.e.*, the placing of unauthorized charges on telephone bills, as defined in the Legislative History of Public Utilities Code sections 2889.9 and 2890:

> ["This bill addresses the problem of 'cramming,' a practice in which consumers are charged for unauthorized services in their phone bills. [¶] ... [¶] A relatively new, and growing, scam on telephone customers is the imposition of charges on the telephone bill for products or services the customer has not bought.... [¶] Often the charges which are 'crammed' on the customer's bill are relatively small, less than $10, and inconspicuously labeled. If one does not carefully scrutinize the telephone bill, the crammed charge could easily be overlooked."]; Sen. Bill No. 378, approved by Governor, Sept. 30, 1998 (Amend.Aug.21, 1998) (1997 1998 Reg. Sess.) ["'Cramming' charges are usually comprised of services such as unauthorized voice mail options, Internet access options, calling cards, paging services, and 800 numbers. In many cases[,] these unauthorized charges are initiated from sweepstakes, raffles, and telemarketers of unknown and unscrupulous companies."].)

Assem. Bill No. 2142, 3d reading May 7, 1998, Assem. Floor (1997 1998 Reg. Sess.).

31. According to the CPUC, "the practice of cramming has become a serious and widespread problem in California, draining time and money from California consumers and businesses."

32.     Revised General Order 168, "Market Rules to Empower Telecommunications Consumers and to Prevent Fraud" similarly provides that "Telephone companies may bill subscribers only for authorized charges."

33.     Further, the duty of good faith and fair dealing, a part of every contract, requires that T-Mobile not bill any customer for any good or service not authorized by the customer.

34.     Upon execution of said Service Agreements and activation of cellular telephone accounts, T-Mobile provides its customers a ten-digit cellular telephone number.

35.     Unbeknownst to its customers, T-Mobile often "recycles" "dirty" telephone numbers, numbers that they were previously owned and/or used by other persons or entities and encumbered with pre-existing billing obligations for products and services authorized to be purchased, if at all, by the previous owners and/or users of said numbers.

36.     T-Mobile has no effective system, policy or procedure in place for ensuring that the ten-digit cellular phone numbers it provides customers have been properly "screened" and scrubbed "clean" so as to ensure that its customers are not adversely affected by the actions, inactions, obligations and/or encumbrances of previous owners and/or users of the telephone numbers.

37.     As a result, T-Mobile has for years been systematically, repeatedly and without authorization, billing its customers for products and services not authorized to be purchased by those customers. Indeed, if such purchases were authorized at all, they were authorized by previous owners and/or users of such telephone numbers. T-Mobile and third-party service providers have, on information and belief, profited greatly from this practice.

38.     T-Mobile's unlawful charging is further exacerbated by its failure to strictly comply with various disclosure-related requirements of Public Utilities Code section 2890, making it more difficult for customers to discover the unauthorized charges, realize what their options are, and thereafter dispute said charges.

39.   Public Utilities Code section 2890(d) provides, in relevant part, as follows:

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill. A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

40.   Although required to do so, the bills issued by T-Mobile systematically failed to include information with regard to how to disputes specific charges, failed to include the name of the party responsible for generating the charge, failed to include a toll-free telephone number or other no-cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. T-Mobile's bills also systematically failed to "include the appropriate telephone number of the commission that a subscriber may use to register a complaint," as required by section 2890(d) (2) (b).

41.   According to the CPUC, "[t]he obvious purpose of including the Commission's contact information is to safeguard consumers' Rights to Public Participation and Enforcement (consumers have a right to be informed of their rights and what agency

1  enforces those rights) and Accurate Bills and Redress (consumers have a right to fair, prompt

2  and courteous redress for problems they encounter). Without this information, many or most

3  consumers won't realize what their options are."

4          42.    Public Utilities Code section 2890(e) further requires that "[i]f an entity

5  responsible for generating a charge on a telephone bill receives a complaint from a subscriber

6  that the subscriber did not authorize the purchase of the product or service associated with

7  that charge, the entity, not later than 30 days from the date on which the complaint is

8  received, shall verify the subscriber's authorization of that charge or undertake to resolve the

9  billing dispute to the subscriber's satisfaction." T-Mobile systematically failed to adhere to

10  these "cramming" rules in its treatment of Plaintiff and other affected customers.

11          43.    Pursuant to Public Utilities Code section 2890(d)(2)(D), "[i]f there is a

12  dispute, there is a rebuttable presumption that an unverified charge for a product or service

13  was not authorized by the subscriber and that the subscriber is not responsible for that

14  charge." Plaintiff and the Class dispute said charges and, thus, are entitled to a presumption

15  that said charges were unauthorized.

16

17                                **CLASS ALLEGATIONS**

18          44.    Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure

19  23(b)(2) and (b)(3), on behalf of himself and a class consisting of all T-Mobile wireless

20  telephone subscribers who received a telephone number from T-Mobile and suffered losses

21  or damages as a result of T-Mobile's billing for products and services not authorized by the

22  new owner of the number (the "Plaintiff Class" or "Class"), but, rather, if at all, by a prior

23  owner or user of the number; provided, however, that the following are excluded from this

24  proposed Class: (i) defendant, and (ii) any relative or employee of defendant.

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

10

45.    Additionally, Plaintiff brings this action on behalf of a state-wide sub-class (the "Sub-Class") consisting of all members of the Class who entered into subscription contracts within the state of California.

46.    The Class and Sub-Class each consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of Rule 23(a)(1).

47.    The claims of Plaintiff are typical of the claims of all of the other members of the respective classes.

48.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other Class members.

49.    Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

50.    Defendant has acted and failed to act on grounds generally applicable to the plaintiff and the other members of the respective classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members.

51.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the respective classes are the same, resulting in injury to the plaintiff and to all of the other Class members. Plaintiff and other Class members have all suffered harm and damages as a result of all of Defendant's unlawful and wrongful conduct.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

11

52.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective class members, and those questions predominate over any questions that may affect individual Class members within the meaning of Rule 23(a)(2) and 23(b)(3). Common questions for the Class include but are not limited to the following:

(a)     Whether Defendant's conduct described herein is "unjust and unreasonable" as specified in 47 U.S.C. § 201(b); and

(b)     Whether Defendant's conduct described herein is in breach of contract.

53.     Common questions for the Sub-Class include:

(a)     Whether Defendant's conduct described herein is in violation of California's Public Utility Code section 2890;

(b)     Whether Defendant's conduct described herein violates California Business and Professions Code sections 17200, *et seq*; and

(c)     Whether Defendant's conduct described herein violates California Business and Professions Code sections 17500, *et seq*.

## COUNT I
### (Violation Of 47 U.S.C. § 201 on behalf of the Class)

54.     Plaintiff incorporates the foregoing allegations.

55.     Section 201 of 47 U.S. Code provides in relevant part as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . . .

56.     T-Mobile's practice of charging Plaintiff and class members for services they never ordered or subscribed to is neither just nor reasonable and is in fact unjust and unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

12

57. 47 U.S.C. § 206, in turn, provides in relevant part:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

58. Finally, 47 U.S.C. § 207 provides in relevant part that

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . .

## COUNT II
### (Unauthorized Telephone Charges In Violation Of California Public Utilities Code § 2890 on behalf of the Sub-Class)

59. Plaintiff incorporates by reference the foregoing allegations.

60. California Public Utilities Code section 2106 provides aggrieved persons the following private right of action:

> Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury maybe brought in any court of competent jurisdiction by any corporation or person.

61. In an effort to deter the unlawful practice of "cramming," *i.e.*, the placing of unauthorized charges on telephone bills, the California legislature enacted Public Utilities Code section 2890, which provides, in pertinent part, as follows:

> (a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

13

(b) When a person or corporation obtains a written order for a product or service, the written order shall be a separate document from any solicitation material. The sole purpose of the document is to explain the nature and extent of the transaction. Written orders and written solicitation materials shall be unambiguous, legible, and in a minimum 10 point type. Written or oral solicitation materials used to obtain an order for a product or service shall be in the same language as the written order. Written orders may not be used as entry forms for sweepstakes, contests, or any other program that offers prizes or gifts.

(c) The commission may only permit a subscriber's local telephone service to be disconnected for nonpayment of charges relating to the subscriber's basic local exchange telephone service, long distance telephone service within a local access and transport area (intraLATA), long distance telephone service between local access and transport areas (interLATA), and international telephone service.

(d) (I) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill. A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

14

(C) Establish, maintain, and staff a toll free telephone number to respond to questions or disputes about its charges and to provide the appropriate addresses to which written questions or complaints may be sent. The person, corporation, or billing agent that generates a charge may also contract with a third-party, including, but not limited to, the billing telephone corporation, to provide that service on behalf of the person, corporation or billing agent.

(D) Provide a means for expeditiously resolving subscriber disputes over charges for a product or service, the purchase of which was not authorized by the subscriber. In the case of a dispute, there is a rebuttable presumption that an unverified charge for a product or service was not authorized by the subscriber and that the subscriber is not responsible for that charge. With regard to direct dialed telecommunications services, evidence that a call was dialed is prima facie evidence of authorization. If recurring charges arise from the use of those subscriber initiated services, the recurring charges are subject to this section.

(E) If an entity responsible for generating a charge on a telephone bill receives a complaint from a subscriber that the subscriber did not authorize the purchase of the product or service associated with that charge, the entity, not later than 30 days from the date on which the complaint is received, shall verify the subscriber's authorization of that charge or undertake to resolve the billing dispute to the subscriber's satisfaction.

62.    Defendant violated section 2890 by virtue of its conduct alleged above, including its billing for products or services, the purchase of which he never authorized, thereby causing Plaintiff and the members of the class to suffer loss, damage, and injury.

63.    Plaintiff and the Class are entitled to actual damages pursuant to Public Utilities Code sectin 2106. Plaintiff and the Sub-Class are further entitled to exemplary damages to the extent the evidence shows that Defendant's violations were willful.

///

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
15

## COUNT III
### (Breach Of Contract on behalf of the Class)

64.   Plaintiff incorporates by reference the foregoing allegations.

65.   Plaintiff entered into an agreement with Defendant whereby Plaintiff agreed to pay a certain sum of money in exchange for Defendant's activation of Plaintiff's cellular telephone account and its promise to provide various communication and related services to Plaintiff.

66.   Defendant expressly and/or impliedly agreed to provide Plaintiff with a cellular telephone number free of preexisting billing obligations for products and services ordered, purchased and/or authorized by the previous owners and/or users of said telephone numbers.

67.   Defendant further expressly and/or impliedly agreed to bill Plaintiff only for products or services the purchase of which he had authorized.

68.   Defendant further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

69.   Defendant breached its contractual obligations by providing Plaintiff with a phone number saddled with preexisting obligations, encumbrances and billing arrangements for products and services ordered, purchased and/or authorized, if at all, by the previous owners and/or users of said telephone numbers.

70.   Defendant further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff for products or services, the purchase of which he never authorized.

71.   Plaintiff has performed his obligations under the contract.

72.   The aforementioned breaches of contract have proximately caused the Plaintiff economic injury and other damages.

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

16

## COUNT IV
### (Unlawful, Unfair and Deceptive Business Practices in Violation of California Business & Professions Code § 17200, et seq. on behalf of the Sub-Class)

73.  Plaintiff incorporates by reference the foregoing allegations.

74.  The Unfair Business Practices Act proscribes unfair business competition and defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code §17200 *et seq.*

75.  Defendant violated, and continues to violate this proscription through its conduct alleged above, including its unlawful violations of the California Public Utilities Code section 2890, as set forth above in connection with Plaintiff's First Cause of Action.

76.  Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class. Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

77.  Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## COUNT V
### (False and Misleading Advertising in Violation of California Business & Professions Code § 17500, et seq. on behalf of the Sub-Class)

78.  Plaintiff incorporates by reference the foregoing allegations.

79.  California Business & Professions Code § 17500 provides that:

It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
17

the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

80.    Defendant violated, and continues to violate this provision by virtue of its conduct alleged above.

81.    Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the Sub-Class. Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

82.    Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Russell Bradberry, on behalf of himself and the respective classes, prays for the following relief:

a)    Certify this case as a class action on behalf of the Class and Sub-Class as defined above and appoint Russell Bradberry Class Representative, and appoint John G. Jacobs and Jay Edelson, as co-lead counsel;

b)    Declare that the actions of T-Mobile, as set out above, constitute a breach of contract, and are in violation of 47 U.S.C. § 201, California Public Utilities Code § 2890 and California Business and Professions Code §§ 17200 and 17500;

c)    Enter judgment against T-Mobile for all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's

1    conduct, and if Defendant's conduct is proved willful, award Plaintiff and the

2    Class exemplary damages;

3          d)      Award Plaintiff and the Classes reasonable costs and attorneys'

4    fees;

5          e)      Award Plaintiff and the Classes pre- and post-judgment

6    interest;

7          f)      Enter judgment for an injunctive and/or declaratory relief as is

8    necessary to protect the interests of Plaintiff and the Classes;

9          g)      Award such other and further relief as equity and justice may

10   require.

11

12                          **JURY DEMAND**

13   Plaintiff requests trial by jury of all claims that can be so tried.

14

15                               Respectfully submitted,

16   Dated: October 20, 2006        LAW OFFICES OF TERRY M. GORDON

17

18

19

20   By:

21       TERRY M. GORDON
         One of the Attorneys for RUSSELL
22       BRADBERRY, individually and on
         behalf of a class of similarly situated
23       individuals

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
                              19

JOHN BLIM (*PRO HAC VICE* pending)
JAY EDELSON (*PRO HAC VICE* pending)
MYLES MCGUIRE (Of Counsel) (*PRO HAC VICE* pending)
BLIM & EDELSON, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

JOHN G. JACOBS (*PRO HAC VICE* pending)
BRYAN G. KOLTON (*PRO HAC VICE* pending)
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

20

## T··Mobile·

KDV #152920

**Off Site Service Agreement**

Activation Date 11/02/05   ☒New  ☐Add-on   Store Name Alert Cellular
Account # _____   Agent Code 155 6890   SS# 733-0472   Location Phone _____
Onyx Code _____
Salesperson Name Mimy Herrera   Credit Class _____

For Questions, rate plan changes or other functions, visit my-mobile (at t-mobile.com) or call 611 (from T-Mobile wireless) or (800) 937-8997

Name Russell Bransberry   Driver's License # & State D2552154 CA
Business Name _____   E-Mail _____
Address 3264 Pepper Grass Dr   Daytime Phone 559 739-7284
City, State, ZIP San Diego CA 92115   Date of Birth 06/13/1982
SS# or Federal Tax ID # 570 71 6891   Fax _____
Password _____

**LINE 1 3-A 400** Mobile # 609-446-8694   Minutes Included 600 whenever 1st 39.99
Rate Plan 39.99   Monthly Access Fee _____   Overage Charges _____   1st Month Prorated Charges 39.99
SIM# 8901260031003135349   Optional Features
IMEI # 35055300111938.5   ☒Included Unl Nts   ☒Added txt plan 4.99
Manufacturer/Model # mun phone   ☒Included Unl Wkns   ☐Added
                                   ☐Included

**LINE 2**   Mobile # _____   Minutes Included _____
Rate Plan _____   Monthly Access Fee _____   Overage Charges _____   1st Month Prorated Charges _____
SIM# _____   Optional Features
IMEI # _____   ☐Included _____   ☐Added
                          ☐Included _____   ☐Added
Manufacturer/Model # _____   ☐Included _____   ☐Added

**LINE 3**   Mobile # _____   Minutes Included _____
Rate Plan _____   Monthly Access Fee _____   Overage Charges _____   1st Month Prorated Charges _____
SIM# _____   Optional Features
IMEI # _____   ☐Included _____   ☐Added
                          ☐Included _____   ☐Added
Manufacturer/Model # _____   ☐Included _____   ☐Added

**Smart Access Customers Only:**
You have a $150 spending limit. If your balance exceeds $150, T-Mobile may suspend your service until you bring the balance below $100. Even if suspended, you will continue to be liable for all charges incurred. SPECIAL COMMENTS: 15.00 non refundable fee

Security Deposit _____   Check/Money order # _____
Method of Payment: ☐ Cash ☐ Check ☒ Credit Card ☒ Withdrawal From Bank Account   Reference # _____
Credit Card Information: ☐ MC ☒ Visa ☐ AmEx ☐ Other   ☐ P.O. ☐ Deferred Payment (Business Accounts Only)
Credit Card # 4060 9560 0047 1708  Exp. Date 07/07   Authorization No. 055906
Bank Account Information: Routing Transit # _____   Account # _____

**AUTOMATIC PAYMENT FROM CREDIT CARD OR BANK ACCOUNT: Please charge my monthly T-Mobile service fees to my credit card or bank account. By signing, I authorize T-Mobile to debit my account.**
Signature _____   Date 02 Nov 05

- **THIS AGREEMENT INCORPORATES THE T-MOBILE TERMS AND CONDITIONS AND THE FOLLOWING BROCHURES AND MATERIALS:** Welcome Guide; Welcome Letter; Rates and Services; Coverage Brochure; Coverage Maps; Regional Plan Brochures; T-Mobile for Business Brochure; International Brochure; Handheld Brochure; Added Value Brochure and other rate plan materials.
- You have selected a plan with a fixed service term of at least 12 months. Our fixed term plans are subject to a $200 early cancellation fee per line of service.
- The monthly access fee and included minutes, if any, will be prorated for the number of days you are actually on service with T-Mobile for your first month. There will be a one time $35.00 activation fee per line of service. A Regulatory Programs fee of 86¢ per line/month applies.
- **Cancellation and Return Policy.** You may cancel your service within 14 days of your service activation date (30 days in CA) without a cancellation fee. You may also return your Phone to T-Mobile within the same time period for a refund. Other restrictions apply, please see Section 5 of the T-Mobile Terms and Conditions for a full text of the Cancellation and Return Policy.
- We are required to use the residential or business street address you provided, which must be within our licensed service area, to determine certain taxes and fees. If you give us an address (such as a PO box) that is not a recognized street address, you will be assigned a default location for tax and fee calculation, which may result in a higher or lower charge for taxes and fees.

INITIAL TERM 12 MONTHS   EARLY CANCELLATION FEE $200 PER LINE PER TERM



# ALERT CELLULAR, LLC

Visalia Mall #2
2031 South Mooney Blvd
Space #5528
Visalia, CA 93277
1-800-716-1755

**INVOICE #** 1034253

| | |
|---|---|
| NAME: | RUSSELL BRADBERRY |
| HOME PHONE: | 5597397284 | WORK PHONE: |
| ADDRESS: | 3264 PEPPERGRASS DR |
| CITY: | SAN DIEGO | STATE: CA | ZIP: 8891 | CC AUTH #: 011379 |
| PLAN CODE: | T-CLASS CUSTOMERS |

| DATE: | 11/02/05 | PAYMENT TYPE: Visa |
|---|---|---|
| SALES PERSON: | HERRERA, MARY | SALES ID #: 3954 |
| INVENTORY LOCATION: 337 | DEPARTMENT: VISALIA2 |
| CARRIER: |

| QTY | ITEM# | DESCRIPTION | PLAN | CELL # | ESN / IMEI | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | CONVERSION | ACTIVATION ONLY - CONVERSION | T-CLASS | 6194686894 | | 20.00 | 20.00 |
| 1 | TACTFEE | T-CLASS ACT FEE (NONREFUNDABLE) | | | | 75.00 | 75.00 |

| | |
|---|---|
| SUBTOTAL | 95.00 |
| TAX | 0.00 |
| Exchange Credit | |
| **TOTAL** | **95.00** |

## CUSTOMER HELP SURVEY

You have a seven (7) essential coverage map and the salesperson verified that there is coverage in your area

You received a coverage map by pressing 123 send for T-Mobile and *96 send for Verizon

You can rescind your provider by dialing 611 for T-Mobile and *611 for Verizon

Your first bill will include a one-time activation fee of $ _____ and your bill cycle will start on the _____ of each month. Your first bill will include a prorated amount of $ _____ for your phone month of service.

I ACCEPT / DECLINE (circle One) GWG Protection Program and I fully understand my coverage. Coverage begins on the 31st day and is valid for 1 year from purchase date. Any change or any enrollment needs to be reported to wireless provider and to GWG.

Unexpected changes in handset will void coverage. GWG claim # is 1-866-980-3494.

You can check your up-to-date minutes by dialing #646# (T-Mobile) or #646 (Verizon)

You are not connected with the additional features added to your account and your representative has allowed you how they work (internal, text messaging, etc.). The salesperson has explained to you the _____ year agreement.

Your salesperson's name and number is _____

## TERMS AND CONDITIONS OF SALE

DEFECTIVE HANDSETS - Alert will exchange manufacturer defective handset under 14 days over the counter. The returned phone must be complete with box, battery, charger, instruction manual. Anytime after 14 days the carrier will hand replace the handset through the mail. Alert employees are happy to assist with replacement arrangements.

RETURN POLICY - Alert's return policy is 14 days for T-Mobile Phones and Service (30 days in CA) and 3 days for Verizon Phones and Service. All claims must include original box, instruction manual, battery, homecharger and original invoice. Accessories are non-refundable.

REFUNDS may take 4-8 weeks to process.

SECONDARY AGREEMENT- I understand the phone sold to me is a discounted price was based on the _____ year contract I signed with the carrier. I authorize my credit card to be charged $350 per line if I terminate this contract for any reason prior to the contract expiration date.

' FORM

# WELCOME TO THE U.S. DISTRICT COURT, SAN FRANCISCO
## OFFICE HOURS:   9:00 A.M. TO 4:00 P.M.
### 415.522.2000
#### www.cand.uscourts.gov

**In Addition to the Local Rules, the Following Guidelines Have Been Provided to Ensure That the Filing Process Is Accomplished with Ease and Accuracy.  For Additional Information or Assistance, Please Call the above Number During Office Hours.**

1.    Documents are to be filed in the Clerk's Office at the location of the chambers of the judge to whom the action has been assigned.  We do not accept filings for cases assigned to judges or magistrate judges in the Oakland or San Jose division, per Civil L.R. 3-2(b).

2.    This office will retain the original plus one copy of most documents submitted. We will conform as many copies as you bring for your use.  Related cases require an extra copy for **each** related action designated.

3.    The copy retained goes directly to the assigned Judge.  Courtesy copies, or instructions for couriers to deliver a copy directly to chambers are inappropriate, unless you have been instructed to do so by court order.

4.    In order to facilitate the file stamping process, each original document should be submitted on top of its copies.  In other words, group like documents together--as opposed to a set of originals and separate sets of copies.

5.    The case number must indicate whether it is a civil or criminal matter by the inclusion of **C** or **CR** at the beginning of the number.  Miscellaneous and foreign judgment matters should also be indicated with initials **MISC** or **FJ** at the end of the case number.

6.    The case number must include the initials of the judge and/or magistrate judge followed by the letters designating the case Arbitration (**ARB**), Early Neutral Evaluation (**ENE**) or Mediation (**MED**)--if assigned to one of those programs.

7.    The document caption should include the appropriate judge or magistrate judge involved in a particular matter or before whom an appearance is being made.  This is especially important when submitting Settlement Conference Statements.

8.    Documents are to be stapled or acco-fastened at the top.  Backings, bindings and covers are not required.  Two holes punched at the top of the original document will facilitate processing.

9.    Appropriately sized, stamped, self-addressed return envelopes are to be included with proposed orders or when filing documents by mail.

10.    Proofs of service should be attached to the back of documents. If submitted separately, you must attach a pleading page to the front of the document showing case number and case caption.

11.    There are no filing fees once a case has been opened.

12.    New cases must be accompanied by a completed and signed Civil Cover Sheet, the filing fee or fee waiver request form and an original plus two copies of the complaint and any other documents. For Intellectual Property cases, please provide an original plus three copies of the complaint. Please present new cases for filing before 3:30 p.m., as they take a considerable amount of time to process.

13.    Copies of forms may be obtained at no charge. They may be picked up in person from the Clerk's Office forms cabinet or with a written request accompanied by an appropriate sized, stamped, self-addressed envelope for return. In addition, copies of the Local Rules may be obtained, free of charge, in the Clerk's Office or by sending a written request, along with a self-addressed, 10" x 14" return envelope, stamped with $ 3.95 postage to: Clerk, U.S. District Court, 450 Golden Gate Avenue, 16th Floor, San Francisco, CA 94102.

14.    Two computer terminals which allow public access to case dockets and one terminal with information regarding files at the Federal Records Center (FRC) are located in the reception area of the Clerk's Office. Written instructions are posted by the terminals. Outside of the Clerk's Office, electronic access to dockets is available through PACER. To obtain information or to register call 1-800-676-6851.

15.    A file viewing room is located adjacent to the reception area. Files may be viewed in this area after signing the log sheet and presenting identification. Files are to be returned by 1:00 pm  Under no circumstances are files to be removed from the viewing room.

16.    The Clerk's Office can only accept payment by exact change or check made payable to Clerk, U.S. District Court. No change can be made for fees or the public copy machine.

17.    Two pay copy machines are located in the file viewing room for public use, at fifteen cents ($.15) per page. Copy cards may be purchases at the snack bar on the first floor. Orders for copywork may be placed through Eddie's Document Retrieval by phoning 415-317-5556. Arrangements may be made to bring in a personal copier by calling the Clerk's Office in advance.

18.    We have a drop box for filing when the Clerk's Office is closed. Please see attached for availability and instructions.

## SAN FRANCISCO

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| Alsup, William H. | WHA | Chen, Edward M. | EMC |
| Breyer, Charles R. | CRB | James, Maria-Elena | MEJ |
| Chesney, Maxine M. | MMC | Laporte, Elizabeth D. | EDL |
| Conti, Samuel | SC | Larson, James | JL |
| Hamilton, Phyllis J. | PJH | Spero, Joseph C. | JCS |
| Henderson, Thelton E. | TEH | Zimmerman, Bernard | BZ |
| Illston, Susan | SI | | |
| Jenkins, Martin J. | MJJ | | |
| Patel, Marilyn Hall | MHP | | |
| Schwarzer, William W | WWS | | |
| Walker, Vaughn R | VRW | | |
| White, Jeffrey S. | JSW | | |

## SAN JOSE

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| Fogel, Jeremy | JF | Lloyd, Howard R. | HRL |
| Ware, James | JW | Seeborg, Richard | RS |
| Whyte, Ronald M. | RMW | Trumbull, Patricia V. | PVT |

## OAKLAND

| Article III Judges | Judges Initials | Magistrate Judges | Judges Initials |
|---|---|---|---|
| Armstrong, Saundra B. | SBA | Brazil, Wayne D. | WDB |
| Jensen, D. Lowell | DLJ | | |
| Wilken, Claudia | CW | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

# NOTICE OF ASSIGNMENT OF CASE
## TO A UNITED STATES MAGISTRATE JUDGE FOR TRIAL

Pursuant to General Order 44, the Assignment Plan of the United States District Court for the Northern District of California, this case has been randomly assigned to Magistrate Judge

**ELIZABETH D. LAPORTE**

Pursuant to Title 28 U.S.C. § 636(c), with written consent of all parties, a magistrate judge may conduct all proceedings in the case. Attached is a form to complete if you consent to proceed before the assigned magistrate judge and a form to complete if you decline to proceed before the assigned magistrate judge. Electronic versions of both forms are also available at the Court's Internet site: http://www.cand.uscourts.gov. Click on Forms-Civil. A party is free to withhold consent without adverse consequences. If a party declines to consent, the case will be randomly reassigned to a district judge and a case management conference will be scheduled on the district judge's calendar as close as possible to the date presently scheduled before the magistrate judge.

You must file your consent or declination by the deadline for filing the initial case management statement.

The plaintiff or removing party shall serve a copy of this notice and all attachments upon all other parties to this action pursuant to Federal Rules of Civil Procedure 4 and 5.

FOR THE COURT
RICHARD W. WIEKING, CLERK

By: Deputy Clerk

MARY ANN BUCKLEY

MagAssnNtc-2-03.wpd

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

No. C

Plaintiff(s),

**CONSENT TO PROCEED BEFORE A
UNITED STATES MAGISTRATE JUDGE**

v.

Defendant(s).

## CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE

In accordance with the provisions of Title 28, U.S.C. Section 636(c), the undersigned party hereby voluntarily consents to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and order the entry of a final judgment. Appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

Dated: _____

_____
Signature

_____
Counsel for
(Plaintiff, Defendant or indicate "pro se")

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

No. C

Plaintiff(s),

v.

Defendant(s).

DECLINATION TO PROCEED BEFORE
A MAGISTRATE JUDGE
AND
REQUEST FOR REASSIGNMENT TO A
UNITED STATES DISTRICT JUDGE

REQUEST FOR REASSIGNMENT TO A UNITED STATES DISTRICT JUDGE

The undersigned party hereby declines to consent to the assignment of this case to a United
States Magistrate Judge for trial and disposition and hereby requests the reassignment of this case to
a United States District Judge.

Dated: _____

Signature _____

Counsel for _____
(Plaintiff, Defendant, or indicate "pro se")

C 06 6567

*EDL*

# U.S. District Court Northern California

## ECF Registration Information Handout

The case you are participating in has been designated for this court's Electronic Case Filing (ECF) Program, pursuant to Local Rule 5-4 and General Order 45. This means that you must (check off the boxes ☑ when done):

☐ **1) Register** to become an efiler by filling out the efiler application form. Follow ALL the instructions on the form carefully. If you are already registered in this district, do not register again, your registration is valid for life on all ECF cases in this district.

☐ **2) Serve** this ECF Registration Information Handout on all parties in the case along with the complaint, or for removals, the removal notice. DO NOT serve the efiler application form, just this handout.

☐ **3) Email** (do not efile) the complaint and, for removals, the removal notice and all attachments, in PDF format within ten business days, following the instructions below. You do not need to wait for your registration to be completed to email the court.

☐ **4) PACER** (Public Access to Court Electronic Records) access is mandatory to access dockets and documents. If your firm already has a PACER account, please use that - it is not necessary to have an individual account. PACER registration is free. If you need to establish or check on an account, visit: **http://pacer.psc.uscourts.gov** or call (800) 676-6856.

BY SIGNING AND SUBMITTING TO THE COURT A REQUEST FOR AN ECF USER ID AND PASSWORD, YOU CONSENT TO ENTRY OF YOUR E-MAIL ADDRESS INTO THE COURT'S ELECTRONIC SERVICE REGISTRY FOR ELECTRONIC SERVICE ON YOU OF ALL E-FILED PAPERS, PURSUANT TO RULES 77 and 5(b)(2)(D) (eff. 12.1.01) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

All subsequent papers in this case shall be filed electronically.

ECF registration forms, interactive tutorials and complete instructions for efiling may be found on the ECF website: **http://ecf.cand.uscourts.gov**

### Submitting Initiating Documents

PDF versions of all the initiating documents originally submitted to the court (Complaint or Notice of Removal, exhibits, etc.) must be emailed (not efiled) to the PDF email box for the presiding judge (not the referring judge, if there is one) within 10 (ten) business days of the opening of your case. For a complete list of the email addresses, please go to: http://ecf.cand.uscourts.gov and click on [Judges].

Version 6/19/2006

# U.S. District Court Northern California

### Submitting Initiating Documents (continued)
You must include the case number and judge's initials in the subject line of all relevant emails to the court. You do not need to wait for your registration to email these documents.

These documents must be emailed instead of e-filed to prevent duplicate entries in the ECF system. All other documents must be e-filed from then on. You do not need to efile or email the Civil Cover Sheet, Summons, or any documents issued by the court at case opening; note that you do need to efile the Summons Returned.

### Converting Documents to PDF
Conversion of a word processing document to a PDF file is required before any documents may be submitted to the Court's electronic filing system. Instructions for creating PDF files can be found at the ECF web site: http://ecf.cand.uscourts.gov, and click on [FAQ].

### Email Guidelines: When sending an email to the court, the subject line of the email **must** contain the **case number**, judge's **initials** and the **type of document(s)** you are sending, and/or the topic of the email.

**Examples:** The examples below assume your case number is 03-09999 before the Honorable Charles R. Breyer:

| Type of Document | Email Subject Line Text |
|---|---|
| Complaint Only | 03-09999 CRB Complaint |
| Complaint and Notice of Related Case | 03-09999 CRB Complaint, Related Case |
| Complaint and Motion for Temporary Restraining Order | 03-09999 CRB Complaint, TRO |

### Questions
Almost all questions can be answered in our FAQs at http://ecf.cand.uscourts.gov, please check them first.

You may also email the ECF Help Desk at ECFhelpdesk@cand.uscourts.gov or call the toll-free ECF Help Desk number at: (866) 638-7829.

The ECF Help Desk is staffed Mondays through Fridays from 9:00am to 4:00pm Pacific time, excluding court holidays.

Version 6/19/2006

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RUSSELL BRADBERRY,

       Plaintiff(s),

       v.

T-MOBILE USA,

       Defendant(s).

No. C 06-06567 EDL

ORDER SETTING INITIAL CASE
MANAGEMENT CONFERENCE
AND ADR DEADLINES

IT IS HEREBY ORDERED that this action is assigned to the Honorable Elizabeth D. Laporte. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order, , the Notice of Assignment of Case to a United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule set forth below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at www.adr.cand.uscourts.gov. A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

## CASE SCHEDULE - ADR MULTI-OPTION PROGRAM

| Date | Event | Governing Rule |
|------|-------|----------------|
| 10/20/2006 | Complaint filed | |
| 21 days before CMC * 1/2/2007 | Last day to: | |
| | meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | file ADR Certification signed by Parties and Counsel (form available at www.adr.cand.uscourts.gov) | Civil L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (forms available at www.adr.cand.uscourts.gov ) | Civil L.R .16-8 (c) & ADR L.R .3-5(b)& (c) |
| 7 days before CMC * 1/16/2007 | Last day to complete initial disclosures or state objection in Rule 26(f) Report, file Case Management Statement (form available at www.cand.uscourts.gov), and file Rule 26(f) Report | FRCivP 26(a) (1) & Civil L.R. 16-9 |
| 1/23/2007 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) in Ctrm E, 15th Floor, SF at 10:00 AM | Civil L.R.16-10 |

*  If the Initial Case Management Conference is continued, the other deadlines are continued accordingly.

## STANDING ORDER

### Magistrate Judge Elizabeth D. Laporte

1) Civil law and motion is heard on Tuesdays at 9:00 a.m. Criminal law and motion is heard on Tuesdays at 1:15 p.m. Counsel need not reserve a hearing date in advance. However, noticed dates may be reset as the court's calendar requires.

2) Case Management Conferences are held on Tuesdays at 10:00 a.m. Pretrial Conferences are held on Tuesdays at 2:00 p.m.

3) Discovery motions may be addressed to the Court in three ways. A motion may be noticed on not less than 35 days pursuant to Civil L.R. 7-2. Alternatively, any party may seek an order to shorten or enlarge time under Civil L.R. 6-3 if the circumstances justify that relief. In emergencies during discovery events, the Court is available pursuant to Civil L.R. 37-1(b).

   In the event a discovery dispute arises, counsel (or if pro se, the party) seeking discovery or a protective order shall confer in good faith with opposing counsel (or pro se party) in an effort to resolve the dispute without court action, as required by Fed. R. Civ. P. 37 and Civil L.R. 37-1(a). The Court will not consider discovery motions unless the moving party has complied with Fed. R. Civ. P. 37 and Civil L.R. 37-1(a).

4) The Court strives to set matters and render decisions in a timely manner. The Court encourages parties to advise the Court by letter to chambers of any matter that appears to have been unduly delayed.

IT IS SO ORDERED.

Dated: July 26, 2005

ELIZABETH D. LAPORTE
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Plaintiff(s),                          No.      EDL

v.                                     STANDING ORDER RE
                                       CASE MANAGEMENT CONFERENCE
Defendant(s).

**Lead trial counsel** who will try this case are directed to confer in advance of the Case Management Conference with respect to all matters contained in the attached Proposed Joint Case Management Order, including a discovery plan and discovery limits and all other matters described in Federal Rules of Civil Procedure 16(a), 16(b) and 26(f) and Civil Local Rule 16-10. Pursuant to Civil L.R. 16-10(a), lead trial counsel shall attend the Case Management Conference and be prepared to discuss all matters referred to in this order. Counsel shall have the authority to enter stipulations and make admissions regarding all matters described herein.

PLAINTIFF IS DIRECTED TO SERVE COPIES OF THIS ORDER AT ONCE UPON ALL PARTIES IN THIS ACTION AND UPON THOSE SUBSEQUENTLY JOINED IN ACCORDANCE WITH THE PROVISIONS OF FEDERAL RULES OF CIVIL PROCEDURE 4 AND 5 AND CIVIL LOCAL RULES 4 AND 5, and to file with the Clerk of the Court a Certificate reflecting such service.

Failure to comply with this order, the provisions of Federal Rule of Civil Procedure 16 and 26(f) or the provisions of Civil L.R. 16-10 may be grounds for sanctions. (See Fed. R. Civ. P. 16(f)).

Dated: January 26, 2001

ELIZABETH D. LAPORTE
United States Magistrate Judge

**APPENDIX A – JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Plaintiff(s), | CASE NO. |
| v. | JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER |
| Defendant(s). | |

The parties to the above-entitled action jointly submit this Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

### DESCRIPTION OF THE CASE

1. A brief description of the events underlying the action:

2. The principal factual issues which the parties dispute:

3. The principal legal issues which the parties dispute:

4. The other factual issues *[e.g. service of process, personal jurisdiction, subject matter jurisdiction or venue]* which remain unresolved for the reason stated below and how the parties propose to resolve those issues:

5. The parties which have not been served and the reasons:

6. The additional parties which the below-specified parties intend to join and the intended time frame for such joinder:

7. The following parties consent to assignment of this case to a United States Magistrate Judge for *[court or jury]* trial:

### ALTERNATIVE DISPUTE RESOLUTION

8. *[Please indicate the appropriate response(s).]*

☐  The case was automatically assigned to Nonbinding Arbitration at filing and will be ready for the hearing by *(date)* _____

☐  The parties have filed a Stipulation and Proposed Order Selecting an ADR process *(specify process):* _____

☐  The parties filed a Notice of Need for ADR Phone Conference and the phone conference was held on or is scheduled for _____

☐  The parties have not filed a Stipulation and Proposed Order Selecting an ADR process and the ADR process that the parties jointly request [or a party separately requests] is

9. Please indicate any other information regarding ADR process or deadline.

## DISCLOSURES

10. The parties certify that they have made the following disclosures *[list disclosures of persons, documents, damage computations and insurance agreements]*:

## DISCOVERY

11. The parties agree to the following discovery plan *[Describe the plan e.g., any limitation on the number, duration or subject matter for various kinds of discovery; discovery from experts; deadlines for completing discovery]*:

## TRIAL SCHEDULE

12. The parties request a trial date as follows:

13. The parties expect that the trial will last for the following number of days:

Dated: _____

_____
[Typed name and signature of counsel.]

Dated: _____

_____
[Typed name and signature of counsel.]

## CASE MANAGEMENT ORDER

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this Order. In addition the Court orders:

[The Court may wish to make additional orders, such as:
 a. Referral of the parties to court or private ADR process;
 b. Schedule a further Case Management Conference;
 c. Schedule the time and content of supplemental disclosures;
 d. Specially set motions;
 e. Impose limitations on disclosure or discovery;
 f. Set time for disclosure of identity, background and opinions of experts;
 g. Set deadlines for completing fact and expert discovery;
 h. Set time for parties to meet and confer regarding pretrial submissions;
 i. Set deadline for hearing motions directed to the merits of the case;
 j. Set deadline for submission of pretrial material;
 k. Set date and time for pretrial conference;
 l. Set a date and time for trial.]

Dated: _____

_____
UNITED STATES DISTRICT/MAGISTRATE JUDGE

VIA CERTIFIED MAIL

LAW OFFICES OF TERRY M. GORDON
THREE HARBOR DRIVE · SUITE 317
SAUSALITO, CALIFORNIA 94965

TO:

T-MOBILE, USA
c/o CSC – LAWYERS INCORPORATING SERVICE
P.O. BOX 526036
SACRAMENTO, CA 95852-6036

7006 0810 0006 0831 6759

U.S. POSTAGE
$3.32

# EXHIBIT A

UCS

TERRY M. GORDON – SBN 75604
LAW OFFICES OF TERRY M. GORDON
Three Harbor Drive, Suite 317
Sausalito, California 94965
Telephone:     (415) 331-3601
Facsimile:     (415) 331-1225

JOHN G. JACOBS (*PRO HAC VICE* PENDING)
BRYAN G. KOLTON (*PRO HAC VICE* PENDING)
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850

JAY EDELSON (*PRO HAC VICE* PENDING)
MYLES MCGUIRE (*PRO HAC VICE* PENDING)
BLIM & EDELSON, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

ATTORNEYS FOR PLAINTIFF

```
FILED  Santa Clara Co
09/13/07   2:39pm
Kiri Torre
Chief Executive Offic
By: jzenzen DTSCIV010
R#200700091060
CK            $320.00
TL            $320.00
Case: 1-07-CV-094234
```

*J. Zenzen*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

RUSSELL BRADBERRY, individually and
on behalf of a class of similarly situated
individuals,

    Plaintiff,

v.

MBLOX, INC., a Delaware corporation,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. **107CV-094234**

**COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

<u>**CLASS ACTION**</u>

**BY FAX**

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**CLASS ACTION COMPLAINT**

Plaintiff Russell Bradberry ("Bradberry"), on behalf of himself, a class and a subclass, brings this class action against mBlox, Inc. ("mBlox") seeking to stop Defendant's practice of causing cellular telephone customers to be billed for mobile content services that the customers did not order, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE CASE**

1.      The increased use of cell phones has given rise to a new industry that provides so-called "mobile content" services such as ringtones, text alerts, jokes, news, games, and daily horoscopes to cell phone users' mobile devices.  The providers of mobile content (the mobile "content providers") charge for their services and cause such charges to be placed directly on customers' cell phone accounts through their wireless carriers (the "carriers"). The carriers then bill and collect such amounts, serving as partners in these transactions, retaining a portion of all revenue that they collect on account of mobile content services.

2.      Because mobile content providers are typically unable to establish a direct billing and content delivery relationship with the carriers, they most often turn to one of a handful of companies known in the industry as "aggregators," such as mBlox, that act as billing intermediaries without whom the mobile content providers would generally be unable to provide and bill for their mobile content services.

3.      While aggregators such as mBlox charge their content provider clients some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill the carriers' customers: each time a charge is incurred in connection with an alleged purchase of mobile content services offered by a content provider, the aggregator and the content provider cause the charge to be billed directly on the cellular telephone bill of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 2 -

1   the carrier's customer who currently owns and/or uses the telephone number claimed to be

2   associated with that purchase.

3         4.     The carrier then bills and collects the charges from its current customer,

4   retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance

5   to the aggregator, i.e., mBlox, who retains a percentage of the balance in the form of its own

6   "revenue share" and who then remits the balance to its content provider client.

7         5.     In a widespread industry practice little known by those outside the industry,

8   but known to Defendant, carriers such as AT&T Mobility, LLC d/b/a Cingular Wireless

9   ("Cingular"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), Sprint-Nextel

10   Corporation ("Sprint") and T-Mobile USA, Inc. ("T-Mobile"), among many others, routinely

11   "recycle" so-called "dirty" telephone numbers to their customers when they sign up for new

12   cellular telephone service. The numbers are "recycled" in that they were previously owned

13   and/or used by other persons or entities. The numbers are "dirty" in that they are

14   encumbered with pre-existing billing obligations for products and services authorized to be

15   purchased, if at all, by the previous owners and/or users of those numbers.

16         6.     Despite its knowledge about the problem of recycled dirty numbers,

17   Defendant has helped create a system through which cell phone users are billed for mobile

18   content services ordered not by them, but by the previous owners of their cell phone

19   numbers.

20         7.     As a result, for years Defendant has systematically, repeatedly and without

21   authorization caused charges to be placed on the cell phone bills of thousands of consumers

22   across the country for content that was never authorized to be purchased by the current

23   owners of the affected phone numbers, but rather, if at all, by the previous owners of such

24   cell phone numbers, and it has profited enormously from its wrongful conduct, in violation

25   of: (a) the common law of unjust enrichment; (b) the common law of tortious interference

26

27

28

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

- 3 -

1    with a contract; and (c) in violation of California Business and Professions Code section

2    17200 consumer fraud provisions.

3        8.    Plaintiff seeks on behalf of himself and the class members, money damages,

4    disgorgement, injunctive and declaratory relief, costs, and reasonable attorney's fees.

5                                    **PARTIES**

6        9.    Plaintiff Russell Bradberry is a citizen of California.

7        10.    Defendant mBlox, Inc. ("mBlox"), known in the industry as an "aggregator,"

8    is a provider of mobile payments processing and is self-described as the "world's largest

9    mobile transactions network." mBlox is a Delaware corporation with its headquarters and

10    principal place of business in the State of California. mBlox does business throughout the

11    United States, including the State of California and this County.

12                                **JURISDICTION**

13        11.    This Court has jurisdiction over the causes of action asserted herein pursuant

14    to the California Constitution, Article VI, §10, because this case is a cause not given by

15    statute to other trial courts.

16        12.    This Court has jurisdiction over Defendant pursuant to Code of Civil

17    Procedure section § 410.10 because Defendant resides in and/or conducts business in the

18    State of California and/or many of Defendant's wrongful acts arose or emanated from

19    California.

20                                    **VENUE**

21        13.    Venue is proper in this Court pursuant to Code of Civil Procedure § 395.5

22    because Defendant's principal place of business is in this County.

23        **THE PROBLEM OF RECYLED DIRTY CELL PHONE NUMBERS**

24        14.    Cell phone customers are assigned unique phone numbers for their phones,

25    just like traditional land-lines.

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 4 -

15.    However, unlike traditional phones people can use cell phones to pay for certain third-party provided services, like, for example, "ringtones," subscriptions for horoscopes, jokes or stock quotes, sent periodically to customers' cell phones, etc. (A ringtone is simply the sound made by a telephone to indicate an incoming call. The term is most often used to refer to the customizable sounds available on mobile phones.)

16.    These services generally renew automatically each month and the resulting charges are included on the customer's cell phone bill.

17.    The instant lawsuit flows from what happens when a carrier reissues (or "recycles") a cellular number previously assigned to one of its customers that has been abandoned.  (Customers abandon numbers for many different reasons, e.g. they move to a different area code, they change carriers, they no longer want one of their cell phones, or they want a different phone number.)

18.    Defendant knows that these abandoned numbers are often encumbered with preexisting subscriptions to mobile content services thus rendering these numbers "dirty."

19.    Nevertheless, specifically in order to bilk cell phone customers out of money, Defendant has refused to set up procedures to insure that cell phone customers are not charged for preexisting subscriptions authorized, if at all, by a previous owner or user of the number.

20.    Thus, when a telephone number is reassigned to a new customer, Defendant continues to charge the new customer for subscriptions purchased by the old customers.

**THE FACTS RELATING TO THE NAMED PLAINTIFF**

21.    On November 2, 2005, Plaintiff visited the store of an authorized T-Mobile sales representative located in Visalia, California to purchase new cell phone service for his personal use.

22.    On that same day, in exchange for a T-Mobile cell phone plan of 600 "anytime" minutes, Plaintiff agreed to pay T-Mobile $39.99 each month for a period of 12

1  months. (A copy of T-Mobile's Service Agreement with Plaintiff is attached hereto as

2  Exhibit A.)

3      23.    T-Mobile's Service Agreement, including the documents referenced therein,

4  are classic contracts of adhesion.  That is, T-Mobile drafts the boilerplate terms -- including

5  the purported class action waiver and arbitration clauses -- and offers them to potential

6  customers purely on a take-it-or-leave-it basis.  Further, Mr. Bradberry did not see and was

7  not given a copy of the "Terms and Conditions" referenced in the Service Agreement either

8  prior to signing the agreement or at the time of signing.

9      24.    Upon execution of his Service Agreement and activation of his cellular

10  telephone account, T-Mobile provided Plaintiff a cellular phone number or "GSM #" (that is,

11  a Global System for Mobile Communications number) of "tmo+619446----." *(Redacted.)*

12      25.    Unbeknownst to Plaintiff, T-Mobile provided him with a recycled "dirty"

13  phone number -- one saddled with preexisting obligations, encumbrances and billing

14  arrangements for products and services provided by Defendant that were authorized to be

15  purchased, if at all, by the previous owner(s) and/or user(s) of that number.

16      26.    Thus, beginning on or about November 2, 2005 -- the same day Plaintiff

17  obtained his cell phone number and started receiving service from T-Mobile -- and

18  continuing through at least April 28, 2006, Plaintiff's cell phone received multiple unwanted

19  "premium" text message calls on a near daily basis from Defendant and/or Defendant's client

20  Cellfish Media, LLC f/k/a Lagadere Interactive North America, Inc. ("Cellfish").

21  Simultaneously, Plaintiff's cell phone account incurred multiple "premium" text message

22  charges on a near daily basis from Defendant. "Premium" text messages are those that

23  include various forms of software such as ringtones, or as in Plaintiff's case, a text message

24  chatting service.

25      27.    Throughout the relevant period, Plaintiff received dozens of such messages.

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

28.     At no time during the relevant period did Plaintiff authorize the purchase of said products and services provided by Defendant and its client and at no time did Plaintiff consent to either Defendant's or its client Cellfish's sending of text messages to his cellular telephone.

29.     Throughout the relevant time period, T-Mobile billed Plaintiff for "premium" text messaging charges of $0.50 for each of the incoming "premium" text messages Defendant sent to Plaintiff, in addition to T-Mobile's standard charge of $0.05 per each incoming text message.

30.     At no time did Plaintiff authorize T-Mobile, Defendant or anyone else to bill him for those charges.

31.     Plaintiff's counsel later learned that the purported authorization to be billed for Defendant's charges was obtained from an unidentified person with the same "GSM #" eventually assigned by T-Mobile to Plaintiff ("tmo+6194468xxx"); however, the authorization for the subject charges was obtained on July 13, 2005 – a date more than three months *prior* to the time that Plaintiff signed his Service Agreement with T-Mobile, obtained that same cell phone number, or started receiving cell phone service.

32.     Plaintiff could not possibly have authorized the charges for which he was being billed. He did not have any account with T-Mobile at that time. Indeed, from May 2005 until October 2005, Plaintiff was out of the country in the Persian Gulf serving in the United States Navy aboard the U.S.S. Nimitz.

## DEFENDANT BILLED AND COLLECTED MILLIONS OF DOLLARS IN UNAUTHORIZED MOBILE CONTENT CHARGES

33.     Through mBlox's services, its end-to-end technology platform and other value-added services, it has become a one-stop shop for numerous third-party mobile content providers such as Cellfish, and carriers such as T-Mobile, empowering them to take advantage of wireless technology as a content delivery, marketing and communications

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- 7 -

1  channel, while carving out a role for itself as a very critical intermediary in this rapidly

2  growing industry.

3       34.    In order to tap into the emerging wireless content marketplace and make

4  content services available to wireless consumers, content providers must first obtain access to

5  wireless carriers' mobile communications networks and they frequently do so by

6  "partnering" with intermediary companies such as mBlox that provide the content providers

7  direct access to the carriers through existing relationships.

8       35.    mBlox has developed a vast distribution system that integrates into the

9  wireless networks of some of the largest wireless carriers nationwide, including Verizon,

10  Cingular, Sprint Nextel, Alltel, US Cellular, among many others.

11       36.    While aggregators such as mBlox charge their content provider clients some

12  upfront fees, their revenue is primarily generated through a "revenue share" on transactions

13  for which they bill the carriers' customers: each time a charge is incurred in connection with

14  an alleged purchase of mobile content services offered by a content provider, the aggregator

15  and the content provider cause the charge to be billed directly on the cellular telephone bill of

16  the carrier's customer who currently owns and/or uses the telephone number claimed to be

17  associated with the purchase.

18       37.    The carrier then bills and collects the charges from its current customer,

19  retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance

20  to the aggregator, e.g., mBlox, who retains a percentage of the balance in the form of its own

21  "revenue share" and then remits the balance to its content provider client, e.g., Cellfish.

22       38.    mBlox has registered hundreds of millions of transactions and processed

23  hundreds of millions of dollars in transactions over the years and has profited enormously

24  from its arrangement with its carrier partners and its content provider partners.

25       39.    As Defendant knows, the carriers routinely "recycle" so-called "dirty"

26  telephone numbers to their customers when they sign up for new cellular telephone service.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  The numbers are "recycled" in that they were previously owned and/or used by other persons

2  or entities. The numbers are "dirty" in that they are encumbered with pre-existing billing

3  obligations and subscriptions for products and services authorized to be purchased, if at all,

4  by the previous owners and/or users of those numbers.

5       40.    Defendant has not only sanctioned this illegal billing, it has actively and

6  knowingly promoted it by, *inter alia*, actively negotiating and facilitating partnerships

7  between and amongst each other and/or other carriers, aggregators and content providers

8  wherein (1) the content providers and aggregators do not adequately verify whether a

9  telephone number has been recycled; (2) the carriers do not adequately verify the details of

10  the purported authorization to place charges on a cell phone customer's bill, including the

11  identity of the person who supposedly consented to the service, the date such consent was

12  obtained or the manner in which it was obtained; and/or (3) charges are illegally inserted into

13  customers' billing statements for subscriptions authorized by previous owners of the

14  telephone number.

15       41.    Defendant has intentionally helped create a system wherein each participant

16  has a piece of the information and thus can, at least, claim (false as it is) that the blame rests

17  solely at the feet of another. Such system constitutes a deliberate and wilful scheme to cheat

18  large numbers of people out of small amounts of money.

19       42.    As a direct result, Defendant has profited enormously from this illegal

20  practice, all the while being able to maintain plausible deniability.

21  **CLASS ALLEGATIONS**

22       43.    Plaintiff brings this action, pursuant to Code of Civil Procedure § 382 on

23  behalf of himself, a class and a subclass. Those classes are defined as follows:

24       A. The "Class:" consisting of all wireless telephone subscribers in the nation

25  who were charged by mBlox for mobile content services not authorized by the existing

26  owner of the telephone number, but, rather, if at all, by a prior owner or user of the number;

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 9 -

1  provided, however, that the following are excluded from this proposed Class: (i) the

2  defendant, and (ii) any relative or employee of defendant.

3         B.  The "Sub-Class:" a class consisting of all members of the Class who

4  entered into subscription contracts within the state of California.

5      44.   The Classes each consist of thousands of individuals and other entities,

6  making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

7      45.   The claims of Plaintiff are typical of the claims of all of the other members of

8  the respective Classes.

9      46.   Plaintiff will fairly and adequately represent and protect the interests of the

10  other members of the respective classes.  Plaintiff has retained counsel with substantial

11  experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are

12  committed to vigorously prosecuting this action on behalf of the members of the classes, and

13  have the financial resources to do so.  Neither Plaintiff nor his counsel have any interest

14  adverse to those of the other members of the Classes.

15      47.   Absent a class action, most members of the Classes would find the cost of

16  litigating their claims to be prohibitive, and will have no effective remedy.  The class

17  treatment of common questions of law and fact is also superior to multiple individual actions

18  or piecemeal litigation in that it conserves the resources of the courts and the litigants, and

19  promotes consistency and efficiency of adjudication.

20      48.   Defendant has acted and failed to act on grounds generally applicable to the

21  Plaintiff and the other members of the respective classes, requiring the Court's imposition of

22  uniform relief to ensure compatible standards of conduct toward the members of the Classes.

23      49.   The factual and legal bases of Defendant's liability to Plaintiff and to the other

24  members of the respective Classes are the same, resulting in injury to the Plaintiff and to all

25  of the other members of the Classes.  Plaintiff and the other Class members have all suffered

26  harm and damages as a result of Defendant's unlawful and wrongful conduct.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 10 -

50.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class include but are not limited to the following:

    (a)     Whether mBlox has unjustly received money belonging to Plaintiff and the Class and whether under principles of equity and good conscience, mBlox should not be permitted to retain it;

    (b)     Whether mBlox tortiously interfered with Plaintiff's and the Class's contracts with their wireless carriers by causing them to be charged for products and services by their carrier that were authorized, if at all, by the previous owner and/or user of their telephone number.

51.     Common questions for the Sub-Class include:

    (a)     Whether mBlox's conduct described herein violates California Business and Professions Code sections 17200, *et seq.*

## COUNT I

### (Restitution/Unjust Enrichment on behalf of the Class)

52.     Plaintiff incorporates by reference the foregoing allegations.

53.     A benefit has been conferred upon Defendant by Plaintiff and the Class. Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of millions of dollars in unauthorized third party mobile content charges, and in particular, its practice of systematically, repeatedly and without authorization, causing Plaintiff and the Classes of cellular telephone customers to be billed by their cellular carriers for mobile content services authorized to be purchased, if at all, by the previous owners and/or users of such telephone numbers.

54.     Defendant appreciates or has knowledge of said benefit.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 11 -

1    55.    Under principles of equity and good conscience, Defendant should not be

2  permitted to retain the money belonging to Plaintiff and the Class which Defendant has

3  unjustly received as a result of its actions.

4                                **COUNT II**

5              **(Tortious Interference with a Contract on behalf of the Class)**

6    56.    Plaintiff incorporates by reference the foregoing allegations.

7    57.    Plaintiff and the Class had contractual relationships with their wireless carriers

8  whereby they agreed to pay a certain sum of money in exchange for activation of their

9  cellular telephone accounts and their carriers' promise to provide various communication and

10  related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products

11  or services the purchase of which they had authorized.

12    58.    Defendant knew of these contractual relationships and intended to and did

13  induce a breach or disruption of the contractual relationships.

14    59.    Defendant intentionally interfered with said contractual relationships through

15  improper motives and/or means by knowingly and/or recklessly repeatedly causing

16  unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners

17  across the nation.

18    60.    Plaintiff and the Class have suffered loss as a direct result of Defendant's

19  conduct.

20                                **COUNT III**

21    **(Unlawful, Unfair and Deceptive Business Practices in Violation of California
    Business & Professions Code § 17200, et seq. on behalf of the Sub-Class)**

22    61.    Plaintiff incorporates by reference the foregoing allegations.

23    62.    The Unfair Business Practices Act proscribes unfair business competition and

24  defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice.

25  California Business & Professions Code §17200 *et seq.*

26

27

28

63.   Defendant violated, and continues to violate this proscription through its conduct as set forth above.

64.   Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class. Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

65.   Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Russell Bradberry, on behalf of himself and the respective Classes, prays for the following relief:

a)   Certify this case as a class action on behalf of the Classes and as defined above and appoint Russell Bradberry Class Representative, and appoint Jay Edelson and John G. Jacobs, as co-lead counsel;

b)   Declare that the actions of Defendant, as set out above, constitute unjust enrichment, tortious interference with a contract, and are in violation of California Business and Professions Code §17200;

c)   Enter judgment against Defendant for all economic, monetary, actual, consequential, and compensatory damages caused by Defendant' conduct, and if their conduct is proved willful award Plaintiff and the Classes exemplary damages;

f)   Award Plaintiff and the Classes reasonable costs and attorneys' fees;

g)   Award Plaintiff and the Classes pre- and post-judgment interest;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 13 -

h)      Enter judgment for injunctive and/or declaratory relief as is
necessary to protect the interests of Plaintiff and the Classes;

i)      Award such other and further relief as equity and justice may
require.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 13, 2007          LAW OFFICES OF TERRY M. GORDON

By:_____
TERRY M. GORDON
One of the Attorneys for RUSSELL
BRADBERRY, individually and on
behalf of a class of similarly situated
individuals

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 14 -