# EXHIBIT A

Case 4:07-cv-05298-CW   Document 7-2   Filed 10/22/2007   Page 1 of 15

UCS

1  TERRY M. GORDON - SBN 75604
   LAW OFFICES OF TERRY M. GORDON
2  Three Harbor Drive, Suite 317
   Sausalito, California 94965
3  Telephone:  (415) 331-3601
   Facsimile:  (415) 331-1225
4
   JOHN G. JACOBS (*PRO HAC VICE* PENDING)
5  BRYAN G. KOLTON (*PRO HAC VICE* PENDING)
   THE JACOBS LAW FIRM, CHTD.
6  122 South Michigan Avenue
   Suite 1850
7  Chicago, Illinois 60603
   Telephone: (312) 427-4000
8  Facsimile: (312) 427-1850
9
   JAY EDELSON (*PRO HAC VICE* PENDING)
10 MYLES MCGUIRE (*PRO HAC VICE* PENDING)
   BLIM & EDELSON, LLC
11 53 West Jackson Boulevard
   Suite 1642
12 Chicago, Illinois 60604
   Telephone: (312) 913-9400
13 Facsimile: (312) 913-9401

14 ATTORNEYS FOR PLAINTIFF

FILED  Santa Clara Co
09/13/07   2:39pm
Kiri Torre
Chief Executive Offic
By: jzenzen DTSCIV010
R#200700091060
CK          $320.00
TL          $320.00
Case: 1-07-CV-094234

J. Zenzen

BY FAX

16       SUPERIOR COURT OF THE STATE OF CALIFORNIA

17            FOR THE COUNTY OF SANTA CLARA

19 RUSSELL BRADBERRY, individually and       ) Case No. **107CV-094234**
   on behalf of a class of similarly situated )
20 individuals,                              ) COMPLAINT FOR DAMAGES
                                             ) AND INJUNCTIVE RELIEF
21              Plaintiff,                   )
                                             )
22  v.                                       )
                                             ) DEMAND FOR JURY TRIAL
23 MBLOX, INC., a Delaware corporation,      )
                                             )
24              Defendant.                   ) <u>CLASS ACTION</u>
                                             )

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## CLASS ACTION COMPLAINT

Plaintiff Russell Bradberry ("Bradberry"), on behalf of himself, a class and a subclass, brings this class action against mBlox, Inc. ("mBlox") seeking to stop Defendant's practice of causing cellular telephone customers to be billed for mobile content services that the customers did not order, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1. The increased use of cell phones has given rise to a new industry that provides so-called "mobile content" services such as ringtones, text alerts, jokes, news, games, and daily horoscopes to cell phone users' mobile devices. The providers of mobile content (the mobile "content providers") charge for their services and cause such charges to be placed directly on customers' cell phone accounts through their wireless carriers (the "carriers"). The carriers then bill and collect such amounts, serving as partners in these transactions, retaining a portion of all revenue that they collect on account of mobile content services.

2. Because mobile content providers are typically unable to establish a direct billing and content delivery relationship with the carriers, they most often turn to one of a handful of companies known in the industry as "aggregators," such as mBlox, that act as billing intermediaries without whom the mobile content providers would generally be unable to provide and bill for their mobile content services.

3. While aggregators such as mBlox charge their content provider clients some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill the carriers' customers: each time a charge is incurred in connection with an alleged purchase of mobile content services offered by a content provider, the aggregator and the content provider cause the charge to be billed directly on the cellular telephone bill of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 2 -

the carrier's customer who currently owns and/or uses the telephone number claimed to be associated with that purchase.

4. The carrier then bills and collects the charges from its current customer, retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance to the aggregator, i.e., mBlox, who retains a percentage of the balance in the form of its own "revenue share" and who then remits the balance to its content provider client.

5. In a widespread industry practice little known by those outside the industry, but known to Defendant, carriers such as AT&T Mobility, LLC d/b/a Cingular Wireless ("Cingular"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), Sprint-Nextel Corporation ("Sprint") and T-Mobile USA, Inc. ("T-Mobile"), among many others, routinely "recycle" so-called "dirty" telephone numbers to their customers when they sign up for new cellular telephone service. The numbers are "recycled" in that they were previously owned and/or used by other persons or entities. The numbers are "dirty" in that they are encumbered with pre-existing billing obligations for products and services authorized to be purchased, if at all, by the previous owners and/or users of those numbers.

6. Despite its knowledge about the problem of recycled dirty numbers, Defendant has helped create a system through which cell phone users are billed for mobile content services ordered not by them, but by the previous owners of their cell phone numbers.

7. As a result, for years Defendant has systematically, repeatedly and without authorization caused charges to be placed on the cell phone bills of thousands of consumers across the country for content that was never authorized to be purchased by the current owners of the affected phone numbers, but rather, if at all, by the previous owners of such cell phone numbers, and it has profited enormously from its wrongful conduct, in violation of: (a) the common law of unjust enrichment; (b) the common law of tortious interference

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 3 -

1 | with a contract; and (c) in violation of California Business and Professions Code section
2 | 17200 consumer fraud provisions.

8. Plaintiff seeks on behalf of himself and the class members, money damages, disgorgement, injunctive and declaratory relief, costs, and reasonable attorney's fees.

## PARTIES

9. Plaintiff Russell Bradberry is a citizen of California.

10. Defendant mBlox, Inc. ("mBlox"), known in the industry as an "aggregator," is a provider of mobile payments processing and is self-described as the "world's largest mobile transactions network." mBlox is a Delaware corporation with its headquarters and principal place of business in the State of California. mBlox does business throughout the United States, including the State of California and this County.

## JURISDICTION

11. This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

12. This Court has jurisdiction over Defendant pursuant to Code of Civil Procedure section § 410.10 because Defendant resides in and/or conducts business in the State of California and/or many of Defendant's wrongful acts arose or emanated from California.

## VENUE

13. Venue is proper in this Court pursuant to Code of Civil Procedure § 395.5 because Defendant's principal place of business is in this County.

## THE PROBLEM OF RECYLED DIRTY CELL PHONE NUMBERS

14. Cell phone customers are assigned unique phone numbers for their phones, just like traditional land-lines.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 4 -

15. However, unlike traditional phones people can use cell phones to pay for certain third-party provided services, like, for example, "ringtones," subscriptions for horoscopes, jokes or stock quotes, sent periodically to customers' cell phones, etc. (A ringtone is simply the sound made by a telephone to indicate an incoming call. The term is most often used to refer to the customizable sounds available on mobile phones.)

16. These services generally renew automatically each month and the resulting charges are included on the customer's cell phone bill.

17. The instant lawsuit flows from what happens when a carrier reissues (or "recycles") a cellular number previously assigned to one of its customers that has been abandoned. (Customers abandon numbers for many different reasons, e.g. they move to a different area code, they change carriers, they no longer want one of their cell phones, or they want a different phone number.)

18. Defendant knows that these abandoned numbers are often encumbered with preexisting subscriptions to mobile content services thus rendering these numbers "dirty."

19. Nevertheless, specifically in order to bilk cell phone customers out of money, Defendant has refused to set up procedures to insure that cell phone customers are not charged for preexisting subscriptions authorized, if at all, by a previous owner or user of the number.

20. Thus, when a telephone number is reassigned to a new customer, Defendant continues to charge the new customer for subscriptions purchased by the old customers.

### THE FACTS RELATING TO THE NAMED PLAINTIFF

21. On November 2, 2005, Plaintiff visited the store of an authorized T-Mobile sales representative located in Visalia, California to purchase new cell phone service for his personal use.

22. On that same day, in exchange for a T-Mobile cell phone plan of 600 "anytime" minutes, Plaintiff agreed to pay T-Mobile $39.99 each month for a period of 12

1  months. (A copy of T-Mobile's Service Agreement with Plaintiff is attached hereto as
2  Exhibit A.)

3      23.    T-Mobile's Service Agreement, including the documents referenced therein,
4  are classic contracts of adhesion. That is, T-Mobile drafts the boilerplate terms – including
5  the purported class action waiver and arbitration clauses – and offers them to potential
6  customers purely on a take-it-or-leave-it basis. Further, Mr. Bradberry did not see and was
7  not given a copy of the "Terms and Conditions" referenced in the Service Agreement either
8  prior to signing the agreement or at the time of signing.

9      24.    Upon execution of his Service Agreement and activation of his cellular
10 telephone account, T-Mobile provided Plaintiff a cellular phone number or "GSM #" (that is,
11 a Global System for Mobile Communications number) of "tmo+619446----." *(Redacted.)*

12     25.    Unbeknownst to Plaintiff, T-Mobile provided him with a recycled "dirty"
13 phone number -- one saddled with preexisting obligations, encumbrances and billing
14 arrangements for products and services provided by Defendant that were authorized to be
15 purchased, if at all, by the previous owner(s) and/or user(s) of that number.

16     26.    Thus, beginning on or about November 2, 2005 -- the same day Plaintiff
17 obtained his cell phone number and started receiving service from T-Mobile -- and
18 continuing through at least April 28, 2006, Plaintiff's cell phone received multiple unwanted
19 "premium" text message calls on a near daily basis from Defendant and/or Defendant's client
20 Cellfish Media, LLC f/k/a Lagadere Interactive North America, Inc. ("Cellfish").
21 Simultaneously, Plaintiff's cell phone account incurred multiple "premium" text message
22 charges on a near daily basis from Defendant. "Premium" text messages are those that
23 include various forms of software such as ringtones, or as in Plaintiff's case, a text message
24 chatting service.

25     27.    Throughout the relevant period, Plaintiff received dozens of such messages.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 6 -

28. At no time during the relevant period did Plaintiff authorize the purchase of said products and services provided by Defendant and its client and at no time did Plaintiff consent to either Defendant's or its client Cellfish's sending of text messages to his cellular telephone.

29. Throughout the relevant time period, T-Mobile billed Plaintiff for "premium" text messaging charges of $0.50 for each of the incoming "premium" text messages Defendant sent to Plaintiff, in addition to T-Mobile's standard charge of $0.05 per each incoming text message.

30. At no time did Plaintiff authorize T-Mobile, Defendant or anyone else to bill him for those charges.

31. Plaintiff's counsel later learned that the purported authorization to be billed for Defendant's charges was obtained from an unidentified person with the same "GSM #" eventually assigned by T-Mobile to Plaintiff ("tmo+6194468xxx"); however, the authorization for the subject charges was obtained on July 13, 2005 – a date more than three months *prior* to the time that Plaintiff signed his Service Agreement with T-Mobile, obtained that same cell phone number, or started receiving cell phone service.

32. Plaintiff could not possibly have authorized the charges for which he was being billed. He did not have any account with T-Mobile at that time. Indeed, from May 2005 until October 2005, Plaintiff was out of the country in the Persian Gulf serving in the United States Navy aboard the U.S.S. Nimitz.

### DEFENDANT BILLED AND COLLECTED MILLIONS OF DOLLARS IN UNAUTHORIZED MOBILE CONTENT CHARGES

33. Through mBlox's services, its end-to-end technology platform and other value-added services, it has become a one-stop shop for numerous third-party mobile content providers such as Cellfish, and carriers such as T-Mobile, empowering them to take advantage of wireless technology as a content delivery, marketing and communications

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

channel, while carving out a role for itself as a very critical intermediary in this rapidly growing industry.

34. In order to tap into the emerging wireless content marketplace and make content services available to wireless consumers, content providers must first obtain access to wireless carriers' mobile communications networks and they frequently do so by "partnering" with intermediary companies such as mBlox that provide the content providers direct access to the carriers through existing relationships.

35. mBlox has developed a vast distribution system that integrates into the wireless networks of some of the largest wireless carriers nationwide, including Verizon, Cingular, Sprint Nextel, Alltel, US Cellular, among many others.

36. While aggregators such as mBlox charge their content provider clients some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill the carriers' customers: each time a charge is incurred in connection with an alleged purchase of mobile content services offered by a content provider, the aggregator and the content provider cause the charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number claimed to be associated with the purchase.

37. The carrier then bills and collects the charges from its current customer, retains about 20% to 50% of the proceeds as its "revenue share" and then remits the balance to the aggregator, e.g., mBlox, who retains a percentage of the balance in the form of its own "revenue share" and then remits the balance to its content provider client, e.g., Cellfish.

38. mBlox has registered hundreds of millions of transactions and processed hundreds of millions of dollars in transactions over the years and has profited enormously from its arrangement with its carrier partners and its content provider partners.

39. As Defendant knows, the carriers routinely "recycle" so-called "dirty" telephone numbers to their customers when they sign up for new cellular telephone service.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 8 -

The numbers are "recycled" in that they were previously owned and/or used by other persons or entities. The numbers are "dirty" in that they are encumbered with pre-existing billing obligations and subscriptions for products and services authorized to be purchased, if at all, by the previous owners and/or users of those numbers.

40. Defendant has not only sanctioned this illegal billing, it has actively and knowingly promoted it by, *inter alia*, actively negotiating and facilitating partnerships between and amongst each other and/or other carriers, aggregators and content providers wherein (1) the content providers and aggregators do not adequately verify whether a telephone number has been recycled; (2) the carriers do not adequately verify the details of the purported authorization to place charges on a cell phone customer's bill, including the identity of the person who supposedly consented to the service, the date such consent was obtained or the manner in which it was obtained; and/or (3) charges are illegally inserted into customers' billing statements for subscriptions authorized by previous owners of the telephone number.

41. Defendant has intentionally helped create a system wherein each participant has a piece of the information and thus can, at least, claim (false as it is) that the blame rests solely at the feet of another. Such system constitutes a deliberate and wilful scheme to cheat large numbers of people out of small amounts of money.

42. As a direct result, Defendant has profited enormously from this illegal practice, all the while being able to maintain plausible deniability.

## CLASS ALLEGATIONS

43. Plaintiff brings this action, pursuant to Code of Civil Procedure § 382 on behalf of himself, a class and a subclass. Those classes are defined as follows:

A. The "Class:" consisting of all wireless telephone subscribers in the nation who were charged by mBlox for mobile content services not authorized by the existing owner of the telephone number, but, rather, if at all, by a prior owner or user of the number;

provided, however, that the following are excluded from this proposed Class: (i) the defendant, and (ii) any relative or employee of defendant.

   B. The "Sub-Class:" a class consisting of all members of the Class who entered into subscription contracts within the state of California.

44. The Classes each consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

45. The claims of Plaintiff are typical of the claims of all of the other members of the respective Classes.

46. Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Classes.

47. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

48. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the respective classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

49. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the respective Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

50. There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class include but are not limited to the following:

    (a) Whether mBlox has unjustly received money belonging to Plaintiff and the Class and whether under principles of equity and good conscience, mBlox should not be permitted to retain it;

    (b) Whether mBlox tortiously interfered with Plaintiff's and the Class's contracts with their wireless carriers by causing them to be charged for products and services by their carrier that were authorized, if at all, by the previous owner and/or user of their telephone number.

51. Common questions for the Sub-Class include:

    (a) Whether mBlox's conduct described herein violates California Business and Professions Code sections 17200, *et seq.*

## COUNT I

### (Restitution/Unjust Enrichment on behalf of the Class)

52. Plaintiff incorporates by reference the foregoing allegations.

53. A benefit has been conferred upon Defendant by Plaintiff and the Class. Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of millions of dollars in unauthorized third party mobile content charges, and in particular, its practice of systematically, repeatedly and without authorization, causing Plaintiff and the Classes of cellular telephone customers to be billed by their cellular carriers for mobile content services authorized to be purchased, if at all, by the previous owners and/or users of such telephone numbers.

54. Defendant appreciates or has knowledge of said benefit.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 11 -

55. Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class which Defendant has unjustly received as a result of its actions.

## COUNT II

**(Tortious Interference with a Contract on behalf of the Class)**

56. Plaintiff incorporates by reference the foregoing allegations.

57. Plaintiff and the Class had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts and their carriers' promise to provide various communication and related services to Plaintiff and the Class and to bill Plaintiff and the Class only for products or services the purchase of which they had authorized.

58. Defendant knew of these contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

59. Defendant intentionally interfered with said contractual relationships through improper motives and/or means by knowingly and/or recklessly repeatedly causing unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners across the nation.

60. Plaintiff and the Class have suffered loss as a direct result of Defendant's conduct.

## COUNT III

**(Unlawful, Unfair and Deceptive Business Practices in Violation of California Business & Professions Code § 17200, et seq. on behalf of the Sub-Class)**

61. Plaintiff incorporates by reference the foregoing allegations.

62. The Unfair Business Practices Act proscribes unfair business competition and defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code §17200 *et seq.*

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 12 -

63. Defendant violated, and continues to violate this proscription through its conduct as set forth above.

64. Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class. Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

65. Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Russell Bradberry, on behalf of himself and the respective Classes, prays for the following relief:

    a) Certify this case as a class action on behalf of the Classes and as defined above and appoint Russell Bradberry Class Representative, and appoint Jay Edelson and John G. Jacobs, as co-lead counsel;

    b) Declare that the actions of Defendant, as set out above, constitute unjust enrichment, tortious interference with a contract, and are in violation of California Business and Professions Code §17200;

    c) Enter judgment against Defendant for all economic, monetary, actual, consequential, and compensatory damages caused by Defendant' conduct, and if their conduct is proved willful award Plaintiff and the Classes exemplary damages;

    f) Award Plaintiff and the Classes reasonable costs and attorneys' fees;

    g) Award Plaintiff and the Classes pre- and post-judgment interest;

h) Enter judgment for injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Classes;

i) Award such other and further relief as equity and justice may require.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 13, 2007

LAW OFFICES OF TERRY M. GORDON

By: _____
TERRY M. GORDON
One of the Attorneys for RUSSELL BRADBERRY, individually and on behalf of a class of similarly situated individuals

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
- 14 -