# EXHIBIT C



COPY

1  JOHN BLIM (*PRO HAC VICE* pending)
2  JAY EDELSON (*PRO HAC VICE* pending)
   MYLES MCGUIRE (Of Counsel) (*PRO HAC VICE* pending)
3  BLIM & EDELSON, LLC
   53 West Jackson Boulevard
4  Suite 1642
   Chicago, Illinois 60604
5  Telephone: (312) 913-9400
   Facsimile: (312) 913-9401

6  JOHN G. JACOBS (*PRO HAC VICE* pending)
7  BRYAN G. KOLTON (*PRO HAC VICE* pending)
   THE JACOBS LAW FIRM, CHTD.
8  122 South Michigan Avenue
   Suite 1850
9  Chicago, Illinois 60603
   Telephone: (312) 427-4000
10 Facsimile: (312) 427-1850

11 TERRY M. GORDON - SBN 75604
   LAW OFFICES OF TERRY M. GORDON
12 Three Harbor Drive, Suite 317
   Sausalito, California 94965
13 Telephone:    (415) 331-3601
   Facsimile:    (415) 331-1225

14 ATTORNEYS FOR PLAINTIFFS

15

16              IN THE UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

**C 06-6567**

**EDL**

18 RUSSELL BRADBERRY, individually and     )  Case No.
   on behalf of a class of similarly situated  )
19 individuals,                               )
                                              )
20              Plaintiff,                     )  **COMPLAINT FOR DAMAGES**
                                              )  **AND INJUNCTIVE RELIEF**
21 v.                                          )
                                              )
22 T-MOBILE USA, INC., a Delaware             )  DEMAND FOR JURY TRIAL
   corporation                                )
23                                            )
                Defendant.                     )  **CLASS ACTION**
24                                            )

25

26

27

28

ORIGINAL FILED
06 OCT 20 PM 12: 26
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## CLASS ACTION COMPLAINT

Plaintiff Russell Bradberry ("Bradberry"), on behalf of himself a class and sub-class of similarly situated individuals, brings this class action against T-Mobile USA, Inc. ("T-Mobile") seeking to stop T-Mobile's unlawful practice of "recycling" "dirty" cellular telephone numbers, which practice has resulted in unauthorized charges to customers' accounts, and to obtain redress for all persons injured by T-Mobile's conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE CASE

1.     In a widespread industry practice little known by those outside the industry, T-Mobile routinely "recycles" so-called "dirty" telephone numbers to its customers when they sign up for new cellular telephone service. The numbers are "recycled" in that they were previously owned and/or used by other persons or entities. The numbers are "dirty" in that they are encumbered with pre-existing billing obligations for products and services authorized to be purchased, if at all, by the previous owners and/or users of those numbers.

2.     T-Mobile's practice of re-issuing "dirty" phone numbers has resulted in unauthorized charges being placed on unsuspecting customers' telephone bills, in an illegal practice known as "cramming." For years, T-Mobile has systematically, repeatedly and without authorization, placed charges on customers' monthly bills for third-party services (such as ring tones, joke-a-day programs, wallpaper, screensavers and other forms of software provided by third-party vendors) that were never authorized to be purchased by the current owners of the affected phone numbers, (a) in violation of federal statute; (b) in breach of contract and the duty of good faith and fair dealing, (c) in violation of California Public Utilities Code section 2890 and California Public Utilities Commission Revised

1  General Order 168, and (d) in violation of California Business and Professions Code

2  sections 17200 and 17500 consumer fraud provisions.

3       3.      Because of T-Mobile's wrongful actions, Plaintiff seeks on behalf of himself

4  and the class members, money damages, injunctive and declaratory relief, costs, and

5  reasonable attorneys' fees.

6

7                              **PARTIES**

8       4.      Plaintiff Russell Bradberry is a citizen of California.

9       5.      Defendant T-Mobile USA, Inc. ("T-Mobile") is a leading provider of cellular

10  telephone service in the United States.  T-Mobile is a Delaware corporation with its principal

11  place of business in the State of New York.  T-Mobile does business throughout the United

12  States, including the State of California and this judicial district.

13

14                            **JURISDICTION**

15       6.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §

16  1331.  It also has jurisdiction under section 1332(d), because (a) at least one member of the

17  putative class is a citizen of a state different from Defendant, (b) the amount in controversy

18  exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under

19  that subsection applies to the instant action.  This Court has supplemental jurisdiction over

20  the remaining counts under 28 U.S.C. § 1367.

21

22                              **VENUE**

23       7.      Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c).

24  ///

25  ///

26  ///

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

3

## THE FACTS RELATING TO THE NAMED PLAINTIFF

8.  On November 2, 2005, Plaintiff visited the store of an authorized T-Mobile sales representative located in Visalia, California to purchase new cell phone service for his personal use.

9.  On that same day, in exchange for a T-Mobile cell phone plan of 600 "anytime" minutes, Plaintiff agreed to pay T-Mobile $39.99 each month for a period of 12 months. (A copy of T-Mobile's Service Agreement with Plaintiff is attached hereto as Exhibit A.)

10.  Upon execution of his Service Agreement and activation of his cellular telephone account, T-Mobile provided Plaintiff a cellular phone number or "GSM #" (that is, a Global System for Mobile Communications number) of "tmo+6194468694."

11.  Unbeknownst to Plaintiff, T-Mobile provided him with a recycled "dirty" phone number -- one saddled with preexisting obligations, encumbrances and billing arrangements for products and services authorized to be purchased, if at all, by the previous owner(s) and/or user(s) of that number.

12.  Thus, beginning on or about November 2, 2005 -- the same day Plaintiff obtained his cell phone number and started receiving service from T-Mobile -- and continuing through at least April 28, 2006, Plaintiff's cell phone received multiple unwanted "premium" text message calls on a near daily basis from a company called Cellfish Media, LLC, f/d/b/a Lagardere Active North America, Inc. ("Cellfish"), a third-party seller of cellular ringtone products and services. "Premium" text messages are apparently those that include various forms of software, such as ringtones.

13.  Throughout the relevant period, Plaintiff received hundreds of such messages.

14.  At no time did Plaintiff authorize the purchase of said products and services offered by Cellfish and at no time did Plaintiff consent to Cellfish's sending of text messages to his telephone number.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4

15.     Throughout the relevant time period, T-Mobile billed Plaintiff for "premium" text messaging charges of $0.50 for each incoming "premium" text message, in addition to its standard charge of $0.05 per each incoming text message.

16.     At no time did Plaintiff authorize T-Mobile to bill him for said charges.

17.     In or about early 2006, Plaintiff contacted T-Mobile to inquire why his bills were so high and was told that it was because of the premium text message calls he received from Cellfish. Plaintiff advised T-Mobile that he did not authorize the purchase of said products and services offered by Cellfish and that at no time did he consent to Cellfish's sending of any text messages to his telephone number. Plaintiff then asked T-Mobile how he could stop being sent these unauthorized messages from Cellfish for which he was being charged by T-Mobile.

18.     T-Mobile never offered to remove the unauthorized charges from Plaintiff's bill, never undertook to resolve the dispute to Plaintiff's satisfaction, never verified that Plaintiff had, in fact, provided authorization to purchase products and services offered by Cellfish, never verified whether Plaintiff had, in fact, provided consent to Cellfish's sending of any text messages to his telephone number, and never verified that Plaintiff had, in fact, provided authorization to bill his account for said charges. Rather, T-Mobile simply "passed the buck," advising Plaintiff to contact Cellfish.

19.     On multiple occasions thereafter, Plaintiff attempted to contact Cellfish, but was unable to speak directly with anyone at the company and instead was forced to leave voice mail messages, which Cellfish failed to return.

20.     Plaintiff visited Cellfish's website (www.texttoy.com) and was informed that to stop receiving text messages from Cellfish he would need to reply to one of its messages with the word "STOP." Plaintiff followed those instructions, but instead of stopping the unwanted messages, he began to receive even more such messages.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

5

21.    Having not heard from Cellfish and having had no success in stopping the messages, Plaintiff once again contacted T-Mobile. In response, T-Mobile did nothing.

22.    Plaintiff, through his counsel, was finally able to contact Cellfish, through its Director of Legal & Business Affairs, Lisa M. Weissberg. On May 11, 2006, Ms. Weissberg provided Plaintiff's counsel what she described as "the initial, voluntary sign up by your client for this service as of July 13, 2005. The messages received are not spam." Ms. Weissberg claimed, "but messages related to the service that, according to the terms of use of the service agreed to by your client, are being sent."

23.    The purported authorization to be billed for such charges was obtained from an unidentified person with the same "GSM #" eventually assigned by T-Mobile to Plaintiff ("tmo+6194468694"); however, the authorization for the subject charges was obtained on July 13, 2005 – a date *more than three months prior* to the time that Plaintiff signed his Service Agreement with T-Mobile, obtained that same cell phone number from T-Mobile, or started receiving T-Mobile service.

24.    Plaintiff could not possibly have authorized the charges for which he was being billed. He did not have any account with T-Mobile at that time. Indeed, from May 2005 until October 2005, Plaintiff was out of the country in the Persian Gulf serving in the United States Navy aboard the U.S.S. Nimitz, without access to a working cellular phone.

## ADDITIONAL ALLEGATIONS APPLICABLE TO ALL COUNTS

25.    T-Mobile is a telephone corporation and public utility as defined in California Pub. Util. Code sections 216 and 234 and is certified by the California Public Utilities Commission ("CPUC") to offer, and does in fact offer and sell, mobile cellular telecommunication services throughout the State of California.

26.    T-Mobile uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

6

27. T-Mobile's services include providing access to and billing for various third-party services such as ring tones, joke-a-day programs, wallpaper, screensavers and other forms of software provided by numerous third-party vendors with names such as Jamster, M Qube, Cellfish Media LLC (f/k/a Lagardere Active North America, Inc.), and many others.

28. T-Mobile allows such third-party services to be billed directly on a customer's monthly wireless bill.

29. Envisioning the potential for abuse, the California Legislature adopted California Public Utilities Code section 2890 which provides, in relevant part, that: "(a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized."

30. Public Utilities Code section 2890 was intended to deter the unlawful practice of "cramming," *i.e.*, the placing of unauthorized charges on telephone bills, as defined in the Legislative History of Public Utilities Code sections 2889.9 and 2890:

> ["This bill addresses the problem of 'cramming,' a practice in which consumers are charged for unauthorized services in their phone bills. [¶] ... [¶] A relatively new, and growing, scam on telephone customers is the imposition of charges on the telephone bill for products or services the customer has not bought.... [¶] Often the charges which are 'crammed' on the customer's bill are relatively small, less than $10, and inconspicuously labeled. If one does not carefully scrutinize the telephone bill, the crammed charge could easily be overlooked."]; Sen. Bill No. 378, approved by Governor, Sept. 30, 1998 (Amend.Aug.21, 1998) (1997 1998 Reg. Sess.) [" 'Cramming' charges are usually comprised of services such as unauthorized voice mail options, Internet access options, calling cards, paging services, and 800 numbers. In many cases[,] these unauthorized charges are initiated from sweepstakes, raffles, and telemarketers of unknown and unscrupulous companies."].)

Assem. Bill No. 2142, 3d reading May 7, 1998, Assem. Floor (1997 1998 Reg. Sess.).

31. According to the CPUC, "the practice of cramming has become a serious and widespread problem in California, draining time and money from California consumers and businesses."

32. Revised General Order 168, "Market Rules to Empower Telecommunications Consumers and to Prevent Fraud" similarly provides that "Telephone companies may bill subscribers only for authorized charges."

33. Further, the duty of good faith and fair dealing, a part of every contract, requires that T-Mobile not bill any customer for any good or service not authorized by the customer.

34. Upon execution of said Service Agreements and activation of cellular telephone accounts, T-Mobile provides its customers a ten-digit cellular telephone number.

35. Unbeknownst to its customers, T-Mobile often "recycles" "dirty" telephone numbers, numbers that they were previously owned and/or used by other persons or entities and encumbered with pre-existing billing obligations for products and services authorized to be purchased, if at all, by the previous owners and/or users of said numbers.

36. T-Mobile has no effective system, policy or procedure in place for ensuring that the ten-digit cellular phone numbers it provides customers have been properly "screened" and scrubbed "clean" so as to ensure that its customers are not adversely affected by the actions, inactions, obligations and/or encumbrances of previous owners and/or users of the telephone numbers.

37. As a result, T-Mobile has for years been systematically, repeatedly and without authorization, billing its customers for products and services not authorized to be purchased by those customers. Indeed, if such purchases were authorized at all, they were authorized by previous owners and/or users of such telephone numbers. T-Mobile and third-party service providers have, on information and belief, profited greatly from this practice.

38. T-Mobile's unlawful charging is further exacerbated by its failure to strictly comply with various disclosure-related requirements of Public Utilities Code section 2890, making it more difficult for customers to discover the unauthorized charges, realize what their options are, and thereafter dispute said charges.

39.    Public Utilities Code section 2890(d) provides, in relevant part, as follows:

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill. A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

40.    Although required to do so, the bills issued by T-Mobile systematically failed to include information with regard to how to disputes specific charges, failed to include the name of the party responsible for generating the charge, failed to include a toll-free telephone number or other no-cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. T-Mobile's bills also systematically failed to "include the appropriate telephone number of the commission that a subscriber may use to register a complaint," as required by section 2890(d) (2) (b).

41.    According to the CPUC, "[t]he obvious purpose of including the Commission's contact information is to safeguard consumers' Rights to Public Participation and Enforcement (consumers have a right to be informed of their rights and what agency

1  enforces those rights) and Accurate Bills and Redress (consumers have a right to fair, prompt

2  and courteous redress for problems they encounter). Without this information, many or most

3  consumers won't realize what their options are."

4      42.    Public Utilities Code section 2890(e) further requires that "[i]f an entity

5  responsible for generating a charge on a telephone bill receives a complaint from a subscriber

6  that the subscriber did not authorize the purchase of the product or service associated with

7  that charge, the entity, not later than 30 days from the date on which the complaint is

8  received, shall verify the subscriber's authorization of that charge or undertake to resolve the

9  billing dispute to the subscriber's satisfaction." T-Mobile systematically failed to adhere to

10  these "cramming" rules in its treatment of Plaintiff and other affected customers.

11      43.    Pursuant to Public Utilities Code section 2890(d)(2)(D), "[i]f there is a

12  dispute, there is a rebuttable presumption that an unverified charge for a product or service

13  was not authorized by the subscriber and that the subscriber is not responsible for that

14  charge." Plaintiff and the Class dispute said charges and, thus, are entitled to a presumption

15  that said charges were unauthorized.

16

17                                   **CLASS ALLEGATIONS**

18      44.    Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure

19  23(b)(2) and (b)(3), on behalf of himself and a class consisting of all T-Mobile wireless

20  telephone subscribers who received a telephone number from T-Mobile and suffered losses

21  or damages as a result of T-Mobile's billing for products and services not authorized by the

22  new owner of the number (the "Plaintiff Class" or "Class"), but, rather, if at all, by a prior

23  owner or user of the number; provided, however, that the following are excluded from this

24  proposed Class: (i) defendant, and (ii) any relative or employee of defendant.

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

10

45. Additionally, Plaintiff brings this action on behalf of a state-wide sub-class (the "Sub-Class") consisting of all members of the Class who entered into subscription contracts within the state of California.

46. The Class and Sub-Class each consist of thousands of individuals and other entities, making joinder impractical, in satisfaction of Rule 23(a)(1).

47. The claims of Plaintiff are typical of the claims of all of the other members of the respective classes.

48. Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other Class members.

49. Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

50. Defendant has acted and failed to act on grounds generally applicable to the plaintiff and the other members of the respective classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members.

51. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the respective classes are the same, resulting in injury to the plaintiff and to all of the other Class members. Plaintiff and other Class members have all suffered harm and damages as a result of all of Defendant's unlawful and wrongful conduct.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

11

52.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective class members, and those questions predominate over any questions that may affect individual Class members within the meaning of Rule 23(a)(2) and 23(b)(3). Common questions for the Class include but are not limited to the following:

(a)     Whether Defendant's conduct described herein is "unjust and unreasonable" as specified in 47 U.S.C. § 201(b); and

(b)     Whether Defendant's conduct described herein is in breach of contract.

53.     Common questions for the Sub-Class include:

(a)     Whether Defendant's conduct described herein is in violation of California's Public Utility Code section 2890;

(b)     Whether Defendant's conduct described herein violates California Business and Professions Code sections 17200, *et seq*; and

(c)     Whether Defendant's conduct described herein violates California Business and Professions Code sections 17500, *et seq*.

## COUNT I
### (Violation Of 47 U.S.C. § 201 on behalf of the Class)

54.     Plaintiff incorporates the foregoing allegations.

55.     Section 201 of 47 U.S. Code provides in relevant part as follows:

> All charges, practices, classifications, and regulations for and in connection with such communication service [*i.e.*, interstate or foreign communication by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . .

56.     T-Mobile's practice of charging Plaintiff and class members for services they never ordered or subscribed to is neither just nor reasonable and is in fact unjust and unreasonable, as set forth in 47 U.S.C. § 201, and violates the said statute.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

12

57.    47 U.S.C. § 206, in turn, provides in relevant part:

In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee . . . .

58.    Finally, 47 U.S. C. § 207 provides in relevant part that

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction . . .

## COUNT II
### (Unauthorized Telephone Charges In Violation Of California Public Utilities Code § 2890 on behalf of the Sub-Class)

59.    Plaintiff incorporates by reference the foregoing allegations.

60.    California Public Utilities Code section 2106 provides aggrieved persons the following private right of action:

Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was willful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury maybe brought in any court of competent jurisdiction by any corporation or person.

61.    In an effort to deter the unlawful practice of "cramming," *i.e.*, the placing of unauthorized charges on telephone bills, the California legislature enacted Public Utilities Code section 2890, which provides, in pertinent part, as follows:

(a) A telephone bill may only contain charges for products or services, the purchase of which the subscriber has authorized.

---

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

13

(b) When a person or corporation obtains a written order for a product or service, the written order shall be a separate document from any solicitation material. The sole purpose of the document is to explain the nature and extent of the transaction. Written orders and written solicitation materials shall be unambiguous, legible, and in a minimum 10 point type. Written or oral solicitation materials used to obtain an order for a product or service shall be in the same language as the written order. Written orders may not be used as entry forms for sweepstakes, contests, or any other program that offers prizes or gifts.

(c) The commission may only permit a subscriber's local telephone service to be disconnected for nonpayment of charges relating to the subscriber's basic local exchange telephone service, long distance telephone service within a local access and transport area (intraLATA), long distance telephone service between local access and transport areas (interLATA), and international telephone service.

(d) (1) A billing telephone company shall clearly identify, and use a separate billing section for, each person, corporation, or billing agent that generates a charge on a subscriber's telephone bill. A billing telephone company may not bill for a person, corporation, or billing agent, unless that person, corporation or billing agent complies with paragraph (2).

(2) Any person, corporation, or billing agent that charges subscribers for products or services on a telephone bill shall do all of the following:

(A) Include, or cause to be included, in the telephone bill the amount being charged for each product or service, including any taxes or surcharges, and a clear and concise description of the service, product, or other offering for which a charge has been imposed.

(B) Include, or cause to be included, for each entity that charges for a product or service, information with regard to how to resolve any dispute about that charge, including the name of the party responsible for generating the charge and a toll free telephone number or other no cost means of contacting the entity responsible for resolving disputes regarding the charge and a description of the manner in which a dispute regarding the charge may be addressed. Each telephone bill shall include the appropriate telephone number of the commission that a subscriber may use to register a complaint.

(C) Establish, maintain, and staff a toll free telephone number to respond to questions or disputes about its charges and to provide the appropriate addresses to which written questions or complaints may be sent. The person, corporation, or billing agent that generates a charge may also contract with a third-party, including, but not limited to, the billing telephone corporation, to provide that service on behalf of the person, corporation or billing agent.

(D) Provide a means for expeditiously resolving subscriber disputes over charges for a product or service, the purchase of which was not authorized by the subscriber. In the case of a dispute, there is a rebuttable presumption that an unverified charge for a product or service was not authorized by the subscriber and that the subscriber is not responsible for that charge. With regard to direct dialed telecommunications services, evidence that a call was dialed is prima facie evidence of authorization. If recurring charges arise from the use of those subscriber initiated services, the recurring charges are subject to this section.

(E) If an entity responsible for generating a charge on a telephone bill receives a complaint from a subscriber that the subscriber did not authorize the purchase of the product or service associated with that charge, the entity, not later than 30 days from the date on which the complaint is received, shall verify the subscriber's authorization of that charge or undertake to resolve the billing dispute to the subscriber's satisfaction.

62.    Defendant violated section 2890 by virtue of its conduct alleged above, including its billing for products or services, the purchase of which he never authorized, thereby causing Plaintiff and the members of the class to suffer loss, damage, and injury.

63.    Plaintiff and the Class are entitled to actual damages pursuant to Public Utilities Code sectin 2106. Plaintiff and the Sub-Class are further entitled to exemplary damages to the extent the evidence shows that Defendant's violations were willful.

///

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

15

## COUNT III
### (Breach Of Contract on behalf of the Class)

64.    Plaintiff incorporates by reference the foregoing allegations.

65.    Plaintiff entered into an agreement with Defendant whereby Plaintiff agreed to pay a certain sum of money in exchange for Defendant's activation of Plaintiff's cellular telephone account and its promise to provide various communication and related services to Plaintiff.

66.    Defendant expressly and/or impliedly agreed to provide Plaintiff with a cellular telephone number free of preexisting billing obligations for products and services ordered, purchased and/or authorized by the previous owners and/or users of said telephone numbers.

67.    Defendant further expressly and/or impliedly agreed to bill Plaintiff only for products or services the purchase of which he had authorized.

68.    Defendant further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

69.    Defendant breached its contractual obligations by providing Plaintiff with a phone number saddled with preexisting obligations, encumbrances and billing arrangements for products and services ordered, purchased and/or authorized, if at all, by the previous owners and/or users of said telephone numbers.

70.    Defendant further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff for products or services, the purchase of which he never authorized.

71.    Plaintiff has performed his obligations under the contract.

72.    The aforementioned breaches of contract have proximately caused the Plaintiff economic injury and other damages.

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

16

## COUNT IV
### (Unlawful, Unfair and Deceptive Business Practices in Violation of California Business & Professions Code § 17200, et seq. on behalf of the Sub-Class)

73.     Plaintiff incorporates by reference the foregoing allegations.

74.     The Unfair Business Practices Act proscribes unfair business competition and defines same to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code §17200 *et seq.*

75.     Defendant violated, and continues to violate this proscription through its conduct alleged above, including its unlawful violations of the California Public Utilities Code section 2890, as set forth above in connection with Plaintiff's First Cause of Action.

76.     Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the proposed Class.  Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

77.     Such conduct is ongoing and continues to this date.  Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## COUNT V
### (False and Misleading Advertising in Violation of California Business & Professions Code § 17500, et seq. on behalf of the Sub-Class)

78.     Plaintiff incorporates by reference the foregoing allegations.

79.     California Business & Professions Code § 17500 provides that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with

the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised.

80.  Defendant violated, and continues to violate this provision by virtue of its conduct alleged above.

81.  Defendant, through its acts of unfair competition, has obtained money from Plaintiff and members of the Sub-Class. Plaintiff and the members of the Sub-Class ask that this Court restore this money to them and enjoin Defendant from continuing its illegal practices.

82.  Such conduct is ongoing and continues to this date. Plaintiff, the Sub-Class members and the general public are therefore entitled to the relief described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Russell Bradberry, on behalf of himself and the respective classes, prays for the following relief:

a)  Certify this case as a class action on behalf of the Class and Sub-Class as defined above and appoint Russell Bradberry Class Representative, and appoint John G. Jacobs and Jay Edelson, as co-lead counsel;

b)  Declare that the actions of T-Mobile, as set out above, constitute a breach of contract, and are in violation of 47 U.S.C. § 201, California Public Utilities Code § 2890 and California Business and Professions Code §§ 17200 and 17500;

c)  Enter judgment against T-Mobile for all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

18

conduct, and if Defendant's conduct is proved willful, award Plaintiff and the Class exemplary damages;

d) Award Plaintiff and the Classes reasonable costs and attorneys' fees;

e) Award Plaintiff and the Classes pre- and post-judgment interest;

f) Enter judgment for an injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Classes;

g) Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: October 20, 2006

LAW OFFICES OF TERRY M. GORDON

By: _____
TERRY M. GORDON
One of the Attorneys for RUSSELL
BRADBERRY, individually and on
behalf of a class of similarly situated
individuals

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

19

JOHN BLIM (*PRO HAC VICE* pending)
JAY EDELSON (*PRO HAC VICE* pending)
MYLES MCGUIRE (Of Counsel) (*PRO HAC VICE* pending)
BLIM & EDELSON, LLC
53 West Jackson Boulevard
Suite 1642
Chicago, Illinois 60604
Telephone: (312) 913-9400
Facsimile: (312) 913-9401

JOHN G. JACOBS (*PRO HAC VICE* pending)
BRYAN G. KOLTON (*PRO HAC VICE* pending)
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# T··Mobile·

KOU #152920

**Off Site Service Agreement**

Activation Date 11/02/05    ☒New ☐Add-on    Store Name Alert Cellular
Account #    Location Phone 553 733-0472
Onyx Code    Agent Code 1556890
Credit Class    For Questions, rate plan changes or other functions, visit my-t-mobile
Salesperson Name Mimy Herrera    (at t-mobile.com) or call 611 (from T-Mobile wireless) or (800) 937-8997

Name KASELL BRANBERRY    Driver's License # & State D2552154 CA
Business Name    E-Mail
Address 3264 PEPPER GREASS DR    Daytime Phone 559 739-7284
City, State, ZIP SAN DIEGO CA 92115    Date of Birth 06/13/1982
Fax
SS# or Federal Tax ID # 570 71 6891    Password

**LINE 1** ☒-A    Mobile # 609-446-8694    Minutes Included 600 whenever    $ 39.99
Rate Plan 39.99    Monthly Access Fee    Overage Charges    1st Month Prorated Charges 39.99
SIM# 8901260310031355349    Optional Features    400
IMEI # 35055300111938.5    ☐Included unL mls    ☒Added txt plan 4.99
Manufacturer/Model # mun phone    ☐Included unL mins    ☐Added
    ☐Included    ☐Added

**LINE 2**    Mobile #    Minutes Included
Rate Plan    Monthly Access Fee    Overage Charges    1st Month Prorated Charges
SIM#    Optional Features
IMEI #    ☐Included    ☐Added
Manufacturer/Model #    ☐Included    ☐Added
    ☐Included    ☐Added

**LINE 3**    Mobile #    Minutes Included
Rate Plan    Monthly Access Fee    Overage Charges    1st Month Prorated Charges
SIM#    Optional Features
IMEI #    ☐Included    ☐Added
Manufacturer/Model #    ☐Included    ☐Added
    ☐Included    ☐Added

**Smart Access Customers Only:**
You have a $150 spending limit. If your balance exceeds $150, T-Mobile may suspend your service until you bring the balance below $100. Even if suspended, you will continue to be liable for all charges incurred. Special Comments: 15.00 NON refundable fee

Security Deposit    Check/Money order #
Method of Payment: ☐ Cash ☐ Check ☐ Credit Card ☐ Withdrawal From Bank Account ☐ P.O. ☐ Deferred Payment (Business Accounts Only)    Reference #
Credit Card Information: ☐ MC ☒ Visa ☐ AmEx ☐ Other
Credit Card # 4060 9500 0047 1708  Exp. Date 07/07    Authorization # 055906
Bank Account Information: Routing Transit #    Account #
**AUTOMATIC PAYMENT FROM CREDIT CARD OR BANK ACCOUNT:** Please charge my monthly T-Mobile service fees to my credit card or bank account. By signing, I authorize T-Mobile to debit my account.
Signature    Date 02 NOV 05

- **THIS AGREEMENT INCORPORATES THE T-MOBILE TERMS AND CONDITIONS AND THE FOLLOWING BROCHURES AND MATERIALS:** Welcome Guide; Welcome Letter; Rates and Services; Coverage Brochure; Coverage Maps; Regional Plan Brochures; T-Mobile for Business Brochure; International Brochure; Handhelds Brochure; Added Value Brochure and other rate plan materials.
- You have selected a plan with a fixed service term of at least 12 months. Our fixed term plans are subject to a $200 early cancellation fee per line of service.
- The monthly access fee and included minutes, if any, will be pro-rated for the number of days you are actually on service with T-Mobile for your first month.
- There will be a one time $35.00 activation fee per line of service. A Regulatory Programs fee of 86¢ per line/month applies.
- **Cancellation and Return Policy.** You may cancel your service within 14 days of your service activation date (30 days in CA) without a cancellation fee. You may also return your Phone to T-Mobile within this same time period for a refund. Other restrictions apply, please see Section 5 of the T-Mobile Terms and Conditions for a full text of the Cancellation and Return Policy.
- We are required to use the residential or business street address you provided, which must be within our licensed service area, to determine certain taxes and fees. If you give us an address (such as a PO box) that is not a recognized street address, you will be assigned a default location for tax and fee calculation, which may result in a higher or lower charge for taxes and fees.

INITIAL TERM 12 MONTHS    EARLY CANCELLATION FEE OF $200 PER LINE OF SERVICE



# ALERT CELLULAR, LLC

Visalia Mall #2
2031 South Mooney Blvd
Space #5628
Visalia, CA 93277
1-800-716-1755

**INVOICE #  1034253**

| | |
|---|---|
| NAME: RUSSELL BRADBERRY | DATE: 11/02/05 |
| HOME PHONE: 5597397284 | SALES PERSON: HERRERA, MARY |
| WORK PHONE: | PAYMENT TYPE: Visa |
| ADDRESS: 3284 PEPPERGRASS DR | SALES ID #: 3954 |
| CITY: SAN DIEGO   STATE: CA   ZIP: | DEPARTMENT: VISALIA2 |
| PLAN CODE: T-CLASS CUSTOMERS | CC AUTH #: 8891 |
| | INVENTORY LOCATION: 337 |
| | CARRIER: |

| QTY | ITEM# | DESCRIPTION | PLAN | CELL # | ESN / IMEI | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | CONVERSION | ACTIVATION ONLY - CONVERSION | T-CLASS | 6194688694 | | 20.00 | 20.00 |
| 1 | TACTFEE | T-CLASS ACT FEE (NONREFUNDABLE) | | | | 75.00 | 75.00 |

| | |
|---|---|
| SUBTOTAL | 95.00 |
| TAX | 0.00 |
| Exchange Credit | |
| **TOTAL** | **95.00** |

---

*CUSTOMER HELP SURVEY*

You have a seen the coastal coverage map and the salesperson verified that there is
coverage in your area

You Voicemail can be set by pressing 123 send for T-Mobile and '86 send for Verizon

You can reach your provider by dialing 611 for T-Mobile or *611 for Verizon

Your first bill will include a one-time activation fee of $_____. Anytime after 14 days the carrier will add
on the _____ of the month. Your first bill will include a prorated amount of $_____ for
your plan month of service.

I ACCEPT / DECLINE (Circle One) GWG Protection Program and fully understand that my
coverage. Coverage policy is the 31st day and is valid for 1 year from purchase date. Pay
change is any extra that needs to be reported to wireless provider and no GWG.

You acknowledge you up-to-date coverage. GWG claim #is 1-866-580-3454.

You cancel/end your additional features added to your account (and your
representative has shown you how they work. (internet, text messaging, etc.)

You recommunicate with the additional features added to your account (and your

The salesperson has explained to you the _____ year contract I signed with the carrier. I authorize my
credit card to be charged $350 per line if I terminate this contract for any
reason prior to the contract expiration date.

Your salesperson's name and number (s

---

**TERMS AND CONDITIONS OF SALE**

DEFECTIVE HANDSETS - Alert will exchange manufacture defective handset under
14 days over the counter. The defected phone must be complete with box, battery,
charger, instruction manual. Anytime after 14 days the carrier will
replace the handset through the mail. Alert employees are happy to assist with
replacement arrangements.

RETURN POLICY - Alert's return policy is 14 days for T-Mobile Phones and Service
(30 days in CA) and 3 days for Verizon Phones and Service. All returns must include
original box, instruction manual, battery, homecharger and original invoice.
Accessories are non-refundable.

REFUNDS may take 4-8 weeks to process.

SECONDARY AGREEMENT - I understand the phone sold to me at a discounted
price was based on the ____ year contract I signed with the carrier. I authorize my
credit card to be charged $350 per line if I terminate this contract for any
reason prior to the contract expiration date.

**FORM**