Craig M. White (Admitted *Pro Hac Vice*)
Brent R. Austin (SBN 141938)
Chung-Han Lee (SBN 231950)
WILDMAN, HARROLD, ALLEN & DIXON, LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606
Telephone: (312) 201-2000
Facsimile: (312) 201-2555

Jeffrey L. Fillerup (SBN 120543)
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone: (415) 356-4600
Fax No: (415) 356-4610
E-mail: jfillerup@luce.com

Attorneys for Defendant MBLOX, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| RUSSELL BRADBERRY, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>vs.<br><br>MBLOX, INC., a Delaware corporation,<br><br>        Defendant. | Case No. C-07-5298 (CW)<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Judge:          The Honorable Claudia Wilken<br>Date:           December 13, 2007<br>Time:           2:00 p.m.<br>Courtroom:   2, 4th Floor |

1       Defendant MBLOX, INC. (hereinafter "mBlox") respectfully submits the following

2 Memorandum in Opposition to Plaintiff's Motion to Remand this case to state court.

3         **FACTUAL AND PROCEDURAL BACKGROUND**

4       Defendant mBlox timely removed this action on October 17, 2007 from Santa Clara Superior

5 Court pursuant to Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1453 and pursuant

6 to 28 U.S.C. § 1367(a).  On October 22, 2007, mBlox filed a Motion for Joinder, or in the Alternative, to

7 Consolidate Cases seeking to join or consolidate this action ("*Bradberry II*") with an earlier filed action

8 filed by the same plaintiff against T-Mobile USA, Inc., captioned *Bradberry v. T-Mobile USA, Inc.*,

9 Case No. C-06-6567 ("*Bradberry I*").  On November 5, 2007, Plaintiff filed his Motion for Remand.

10 Subsequently, after seeking statements from the parties, this Court ordered on November 9, 2007 that

11 the *Bradberry I* and *Bradberry II* cases were related pursuant to Local Rule 3-12, and reassigned the

12 *Bradberry II* case from Judge Hamilton to this Court.  The Motion for Joinder has since been fully

13 briefed, and the parties have stipulated and the Court has agree to hear the Motion for Joinder at the

14 same time as this Motion to Remand.

15       In his Motion to Remand, Plaintiff seeks remand of this case back to state court arguing that

16 Defendant mBlox has failed to satisfy its burden of proving that claimed damages are in excess of $5

17 million as required by CAFA removal, and that Defendant mBlox cannot rely on supplemental

18 jurisdiction to support jurisdiction in this Court.  Plaintiff does not dispute that the other requirements of

19 CAFA have been met.  However, contrary to Plaintiff's contentions, mBlox can establish by a

20 preponderance of the evidence that the amount in controversy exceeds the $5 million jurisdictional

21 minimum for original jurisdiction under CAFA.  Not only can the $5 million be established from the

22 allegations contained in Plaintiff's Complaint itself, but Plaintiff also made a judicial admission in

23 *Bradberry I* (which involves the exact same Plaintiff alleging the exact same underlying facts and

24 transactions) that the amount in controversy in that case exceeds $5 million.  In addition, mBlox can

25 independently establish through the good faith estimates and calculations provided in the Declaration of

26 Steve Livingston that the amount in controversy at issue in this case is well in excess of $5 million.

27       Furthermore, Plaintiff's argument that the supplemental jurisdiction statute is not a source of

28 original subject matter jurisdiction has no bearing on this motion.  Contrary to Plaintiff's assertions,

mBlox has not attempted to use the supplemental jurisdiction statute as the sole basis to confer federal court jurisdiction. Rather, mBlox's primary basis for removal was CAFA, and mBlox has always asserted that CAFA provides original jurisdiction to hear this case. mBlox's reliance on supplemental jurisdiction was only as an additional basis for jurisdiction made in conjunction with mBlox's motion for joinder or consolidation.

Finally, because mBlox has established that federal jurisdiction is warranted under CAFA, there is no basis for the Court to award Plaintiff attorney's fees or costs.

## ARGUMENT

### A.    Defendant mBlox Can Meet Its Burden of Proving By A Preponderance of the Evidence That The Amount in Controversy Exceeds the Jurisdictional Requirement Under CAFA.

In a motion to remand, the burden of proving the propriety of removal rests with the removing party. *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002). Where it is unclear or ambiguous from the face of a state court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). To satisfy its burden, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount. *Id.*

The procedure in the Ninth Circuit for determining the amount in controversy on removal requires a district court to first consider whether it is "facially apparent" from the Complaint what the jurisdictional amount is in controversy. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If it is not, the court may consider facts in the removal petition as well as evidence submitted by the parties, including "summary-judgment-type evidence relevant to the amount in controversy at the time of removal" such as affidavits or declarations. *Id.*; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). A defendant who bears the burden of proving the propriety of removal must provide facts supporting its assertions as to the minimum jurisdiction requirement. *See, e.g., Alexander v. FedEx Ground Package System, Inc.*, No. C 05-0038, 2005 WL 701601, at *1 (N.D. Cal. Mar. 25, 2005), citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A court may also consider supplemental evidence later proffered by the removing defendant, which was not originally

2

included in the removal notice. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002). "The burden is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Muniz v. Pilot Travel Centers LLC*, No. Civ. S-07-0325, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (*citing McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)).

mBlox can demonstrate through both the allegations contained in the Complaint and through extrinsic evidence that the amount in controversy requirements of CAFA of $5,000,000 can be met.

**B.    The Allegations of Plaintiff's Complaint Provides Sufficient Evidence to Meet the Jurisdictional Amount.**

First, it is "facially apparent" from the complaint that the jurisdictional minimum of $5 million under CAFA is satisfied. While the complaint does not explicitly specify the amount of damages sought by Plaintiff and the putative class members, it does contains the following allegations from which it can be inferred that the jurisdictional amount exceeds $5 million. For example, Plaintiff alleges the following:

- Plaintiff seeks on behalf of himself and the class members, money damages, disgorgement, injunctive and declaratory relief, costs, and reasonable attorney's fees. Complaint ¶ 8.

- mBlox has registered hundreds of millions of transactions and processed hundreds of millions of dollars in transactions over the years and has profited enormously from its arrangement with its carrier partners and its content provider partners. Complaint ¶ 38.

- The "Class:" consisting of all wireless telephone subscribers in the nation who were charged by mBlox for mobile content services not authorized by the existing owner of the telephone number, but, rather, if at all, by a prior owner or user of the number; provided, however, that the following are excluded from this proposed Class: (i) the defendant, and (ii) any relative or employee of defendant. Complaint ¶ 43.

- Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of millions of dollars in unauthorized third party mobile content charges, and in particular, its practice of systematically, repeatedly and without authorization, causing Plaintiff and the Classes of cellular telephone customers to be billed by their cellular

Case No. C-07-5298 (CW)

OPPOSITION TO MOTION TO REMAND

1    carriers for mobile content services authorized to be purchased, if at all, by the previous

2    owners and/or users of such telephone numbers.  Complaint ¶ 53.

3  •  Defendant, through its acts of unfair competition, has obtained money from Plaintiff and

4    members of the proposed Class.  Plaintiff and the members of the Sub-Class ask that this

5    Court restore this money to them and enjoin Defendant from continuing its practices.

6    Complaint ¶ 64.

7  •  Enter judgment against Defendant for all economic, monetary, actual, consequential, and

8    compensatory damages caused by Defendant' (*sic*) conduct, and if their conduct is proved

9    willful award Plaintiff and the Classes exemplary damages.  Prayer for Relief, Subsection (c).

10  •  Award Plaintiff and the Class reasonable costs and attorneys' fees.  Prayer for Relief,

11    Subsection (d).

12  •  Enter judgment for injunctive and/or declaratory relief as is necessary to protect the interests

13    of Plaintiff and the Classes.  Prayer for Relief, Subsection (h).

14  Based on these allegations, it is evident that Plaintiff seeks to certify a nationwide class of cell phone

15  users (not limited solely to T-Mobile subscribers) that may have been assessed unauthorized charges by

16  mBlox for mobile content to which they did not subscribe and that Plaintiff seeks recovery of money

17  damages, disgorgement of mBlox's profits, attorney's fees, injunctive relief, and punitive damages.

18      In measuring the amount in controversy, a court must assume that the allegations of the

19  complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the

20  complaint.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D.

21  Cal. 2002).  The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not

22  what a defendant will actually owe.  *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D.

23  Cal. 2005); *see also Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399

24  (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered

25  when determining the amount in controversy; rather it is the amount put in controversy by the plaintiff's

26  complaint).  First, Plaintiff seeks economic, monetary, actual, consequential, and compensatory

27  damages.  The complaint alleges that mBlox has billed and collected millions of dollars in

28  "unauthorized" third party mobile content charges.  While plaintiff may be correct that his vague

Case No. C-07-5298 (CW)

OPPOSITION TO MOTION TO REMAND

1    reference to "millions of dollars" does not necessarily mean that the amount in controversy exceeds the

2    $5 million requirement of CAFA,[1] Plaintiff ignores the fact that Plaintiff's claimed damages is enhanced

3    by his request for attorney's fees, injunctive relief, and exemplary damages. *Lowdermilk v. U.S. Bank*

4    *Nat. Ass'n*, 479 F.3d 994 (9th Cir. 2007) (finding that attorneys fees were includible in amount in

5    controversy for purposes of determining whether Class Action Fairness Act jurisdictional minimum was

6    met); *Cram v. Electronic Data Systems Corp.*, No. 07-cv-1842, 2007 WL 2904250, at *2 (S.D. Cal. Oct.

7    3, 2007) (*citing Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986)

8    (finding that the calculation of the amount in controversy takes into account claims for general damages,

9    special damages, punitive damages if recoverable as a matter of law, and attorneys' fees recoverable by

10   statute or contract); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established

11   that punitive damages are part of the amount in controversy in a civil action."). While mBlox denies

12   that attorneys fees are recoverable or that injunctive relief is warranted, adding attorney's fees and the

13   amount of money it would cost to implement any injunctive relief sought would almost certainly raise

14   the amount in controversy beyond $5 million. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56

15   (9th Cir. 1998) (recognizing that attorney's fees are included in determining the amount in controversy,

16   regardless of whether the fee award is mandatory or discretionary);[2] *Cohn v. Petsmart, Inc.*, 281 F.3d

17   837, 840 (9th Cir. 2002) (noting that, in actions seeking declaratory or injunctive relief, amount in

18   controversy is measured by the value of the object of the litigation); *Rubel v. Pfizer, Inc.*, 361 F.3d 1016,

19   1020 (7th Cir. 2004) (finding that plaintiffs cannot prevent removal by refusing to concede that the

20   controversy exceeds the jurisdictional minimum, or by insisting that injunctions do not count toward the

21   amount in controversy).

22       Furthermore, while mBlox denies that such damages are recoverable, the complaint specifies that

23   Plaintiff is seeking disgorgement of mBlox's profits from the purportedly "illegal" arrangement with its

---

[1] However, it should be noted that Plaintiffs have not conceded that the value of their claims will not exceed $5 million and certainly have not stipulated to capped their damages at $5,000,000.

[2] Although Plaintiff's complaint does not explicitly state the basis for which he is seeking recovery of attorney's fees, Plaintiff is presumably seeking attorney's fees under Cal. Code. Civ. P. § 1021.5 (providing for attorney's fees awards to prevailing plaintiffs who win relief for the general public).

carrier partners and its content provider partners.[3]  Plaintiff concedes that mBlox has processed hundreds

of millions of dollars in transaction over the years, and thus admits that hundreds of millions of dollars

are in controversy in light of Plaintiff's claim for disgorgement in this case.  In short, based solely on the

allegations in the Complaint, it is evident that the amount in controversy will more likely than not

exceed the jurisdictional minimum under CAFA.

**C.    The Allegations of Plaintiff's Complaint In *Bradberry I* Establishes that this Case Exceeds the Jurisdictional Minimum.**

Even if the Court does not find that the allegations contained in the Complaint satisfy the CAFA

jurisdictional minimum, it is completely disingenuous for the Plaintiff to contend otherwise when

Plaintiff has made a judicial admission in his *Bradberry I* Complaint that the amount in controversy

exceeds $5,000,000.  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995) (finding that a

statement in a complaint may serve as a judicial admission); *see also American Title Ins. Co. v. Lacelaw*

*Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Miller v. Lakeside Village Condominium Ass'n*, 1 Cal. App.

4th 1611, 1623 (Cal. Ct. App. 2d Dist. 1991).

This Court has already determined that *Bradberry II* is related to the *Bradebry I* action.  The two

cases are essentially ***identical cases*** involving the ***same plaintiff***, ***identical facts***, and ***the exact same***

***occurrences and transactions***.  Even though Plaintiff disputes the amount in controversy with respect to

this action, Plaintiff has admitted that the jurisdictional amount in controversy required by CAFA has

been met in the *Bradberry I* case:

> The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.  It also
> has jurisdiction under section 1332(d), because (a) at least one member of the putative
> class is a citizen of a state different from Defendant, (b) the amount in controversy
> exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under
> that subsection applies to the instant action.

---

[3] While normally the total amount of disgorgement cannot be counted toward the amount-in-controversy
unless a plaintiff class presents a claim in which they have a "common and undivided interest," *In re Ford
Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 962 (9th Cir. 2001); *Gibson v. Chrysler Corp.*,
261 F.3d 927 (9th Cir. 2001), these authorities all predate the Class Action Fairness Act of 2005.  CAFA
expressly requires that the claims of individual members shall be aggregated to determine the amount in
controversy.  28 U.S.C. § 1332(d)(6).

6

Case No. C-07-5298 (CW)

1    *Bradberry I* Complaint, ¶ 6. Because the damages and relief that Plaintiff seeks to recover from

2    mBlox in *Bradberry II* mirror what Plaintiff seeks to recover against T-Mobile in *Bradberry I* –

3    namely the recovery of unauthorized overcharges passed on to consumers by wireless carriers

4    such as T-Mobile and aggregators such as mBlox – the amount in controversy in *Bradberry II*

5    must necessarily exceed $5 million as well. In fact, because Plaintiff seeks to certify a class

6    consisting of all wireless telephone subscribers in the nation who were charged by mBlox ***across***

7    ***all carriers*** and is not limited to just T-Mobile subscribers, presumably the amount in

8    controversy in *Bradberry II* would exceed that at issue in *Bradberry I*.[4]

9    **D.    mBlox Can Establish Throught Extrinsic Evidence that the Jurisdictional Amount of**
10   **CAFA is Met.**

11        In addition to the allegations contained in Plaintiff's complaint and the admissions Plaintiff has

12   made in his *Bradberry I* complaint that supports jurisdiction under CAFA, mBlox can provide

13   independent evidence that the amount in controversy in this case exceeds $5 million. A good-faith

14   estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence.

15   *Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004); *see also Muniz v. Pilot Travel Centers LLC*,

16   No. Civ. S-07-0325, 2007 WL 1302504 (E.D. Cal. May 1, 2007) As demonstrated by the Declaration of

17   Rob Malcolm filed concurrently with this brief, a good-faith estimate of potential charges that Plaintiff

18   challenges in this case, and that can reasonably involve mBlox, could be approximately $15.5 million

19   per year. *See* Declaration of Rob Malcolm, ¶¶ 7-14. If you take into account the number of years in

20   which mBlox has been in the U.S. market for Premium SMS Content, that figure could increase to over

21   $34 million. *Id.*, ¶ 15. In addition, an estimate of the amount of challenged charges for "standard" rate

22   text messages from "recycled" telephone numbers could be approximately $3.7 million. *Id.*, ¶ 17.

23   Based on these estimates of the amounts that could be at issue in this case relating to Premium SMS

24   _____

25   [4] Plaintiff will probably argue that his claims against mBlox are necessarily a lesser amount than his
     claims against T-Mobile because mBlox only "retains a percentage of the balance in the form of its own
26   'revenue share' and then remits the balance to its content provider client...." Complaint, ¶ 37. However,
     the amount in controversy in this case is not simply the amount of money that mBlox has "retained" as its
27   "revenue share." Instead, the amount in controversy in this case is the amount of unauthorized charges
     billed to the subscribers – an amount that Plaintiff concedes exceeds $5,000,000 in *Bradberry I* as to T-
28   Mobile alone. With respect to mBlox, that amount must necessarily be greater because mBlox conducts
     business with all of the wireless carriers including AT&T, Verizon, Sprint as well as T-Mobile.

1    Content and standard rate text messages, it is clear that the amount in controversy at issue in this action

2    is potentially in excess of $5,000,000.

3    **E.    mBlox's Assertion of Supplemental Jurisdiction Is Proper When Made in Conjunction with the Pending Motion for Joinder or Consolidation as mBlox Had Done Here.**

4

5    Plaintiff misunderstands mBlox's assertion of supplemental jurisdiction pursuant to 28 U.S.C. §

6    1367(a).  mBlox never asserted that 28 U.S.C. § 1367(a) alone provides an independent basis for federal

7    court jurisdiction, and mBlox does not dispute the cases cited by Plaintiff holding that to be true.

8    Instead, mBlox's assertion of supplemental jurisdiction was made in conjunction with mBlox's pending

9    Motion for Joinder, or in the Alternative, for Consolidation.  As mBlox made clear in its Notice of

10   Removal, "[a] Motion to Consolidate the two actions will be filed with Judge Wilkens (who is presiding

11   over the *Bradberry I* case) shortly after the filing of this Notice of Removal."  Notice of Removal, ¶ 14.

12   As the U.S. Supreme Court recognized in *Exxon Mobile Corp. v. Allapattah Svcs., Inc.*, 545 U.S. 546,

13   559 (2005), "Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the

14   same case or controversy, as long as the action is one in which the district courts would have original

15   jurisdiction.  The last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction

16   extends to claims involving joinder or intervention of additional parties."  Plaintiff has cited no contrary

17   authority.  Instead, the cases relied on by Plaintiff only hold that the supplemental jurisdiction statute in

18   and of itself cannot be the basis for removal to federal court.  However, as established above, the

19   primary basis for jurisdiction in mBlox's Notice of Removal was CAFA, and the Court the has original

20   jurisdiction over this action under CAFA.

21   Here, as demonstrated above, the district court has original jurisdiction over both *Bradberry I*

22   and *Bradberry II* pursuant to CAFA, and supplemental jurisdiction would only serve as an additional

23   basis for this Court's jurisdiction should the Court grant mBlox's pending Motion for Joinder.  There is

24   little doubt that the claims against mBlox is part of the same case or controversy in that it shares a

25   "common nucleus of operative fact" with the admittedly federal claims against T-Mobile in *Bradberry I*,

26   and the claims against both T-Mobile and mBlox should be tried together.  *Trustees of the Constr. Indus.*

27   *& Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th

28   Cir. 2003).  In exercising its discretion to decline supplemental jurisdiction, a district court must

8

Case No. C-07-5298 (CW)

1  undertake a case-specific analysis to determine whether declining supplemental jurisdiction "comports

2  with the underlying objective of most sensibly accommodate[ing] the values of economy, convenience,

3  fairness and comity." *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557-58 (9th

4  Cir. 1994). Here, the Court should both grant mBlox's motion for joinder and deny Plaintiff's motion

5  for remand because judicial economy, fairness and convenience would so dictate.

6  **F.     Defendant is Not Entitled to Attorney's Fees or Costs for the Motion for Remand.**

7       Finally, Plaintiff seeks fees and costs for removing this case to federal court. However, since

8  mBlox's removal to federal court was proper, there is no basis for awarding fees or costs to the Plaintiff.

9  Even if the Court decides that remand is warranted, the Court should reject Plaintiff's request for

10  attorney's fees and costs because mBlox had an objectively reasonable basis for seeking removal.

11  *Nelsen v. PeoplePC, Inc.*, No. C 07-1386, 2007 WL 1574765 (N.D. Cal. May 30, 2007) (*citing Martin v.*

12  *Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

13                                    **CONCLUSION**

14       For the reasons provided above, defendant MBLOX, INC. respectfully requests that the Court

15  deny Plaintiff's Motion to Remand.

16                                         Respectfully submitted,

17  Dated: November 26, 2007               WILDMAN, HARROLD, ALLEN & DIXON LLP

18

19

20                                    By:  /s/    *Chung-Han Lee*
                                              Chung-Han Lee
21

22                                         Craig M. White (*Pro Hac Vice*)
                                           Brent R. Austin (SBN 141938)
23                                         Chung-Han Lee (SBN 231950)
                                           WILDMAN, HARROLD, ALLEN & DIXON, LLP
24                                         225 West Wacker Drive, Suite 2800
                                           Chicago, Illinois 60606
25                                         Telephone:    (312) 201-2000
                                           Facsimile:    (312) 201-2555
26

27

28

                                    9                    Case No. C-07-5298 (CW)

1

2     Jeffrey L. Fillerup (SBN 120543)
      LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3     Rincon Center II, 121 Spear Street, Suite 200
      San Francisco, California 94105-1582
4     Telephone:  415-356-4600
      Fax No:  415-356-4610
5     E-mail:  jfillerup@luce.com

6     Attorneys for Defendant MBLOX, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28